GARDNER, TRUSTEE, *v.* NEW JERSEY.

No. 92. Argued December 20, 1946.—Decided January 20, 1947.

566

*James D. Carpenter* argued the cause for petitioner. With him on the brief were *Howard L. Kern, Alexander H. Elder* and *Samuel M. Coombs, Jr.*

*Benjamin C. Van Tine* argued the cause and filed a brief for respondent.

*Fred N. Oliver, Willard P. Scott, Thomas Raeburn White, William A. Roberts, Philip S. Jessup* and *A. M. Lewis* filed a brief for the Group of Institutional Investors et al., as *amici curiae*, urging reversal. *Charles A. Rooney, Charles Hershenstein* and *Milton B. Conford* filed a brief for Jersey City, as *amicus curiae*, urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case, here on certiorari, presents important problems under § 77 of the Bankruptcy Act. 49 Stat. 911, 11 U. S. C. § 205. The Central Railroad Company of New Jersey (the debtor), of which petitioner is trustee, filed its petition for reorganization in 1939 shortly after receiving notice from the Attorney General of New Jersey that he would apply to a state court for a summary judgment for unpaid taxes of the debtor and seek to sell its property in satisfaction of the judgment. The tax assessments for the years 1932 to 1939 had been extensively litigated both in the state and federal courts and the results were for the most part adverse to the debtor.[1] By the end of 1939 the tax claims of the State against the debtor, exclusive of interest and penalties, exceeded $15,000,000, while the liquid assets of the debtor available to pay them were apparently less than half that amount. The reorganization court stayed suits to collect the taxes but from time to time entered orders directing the debtor to make speci-

---

[1] The history of the litigation is reviewed in the opinion of the Circuit Court of Appeals in this case. 152 F. 2d pp. 408–411.

fied installment payments on account of the taxes for various years.

In 1941 the New Jersey legislature passed a law designed to lessen the tax burden of railroads in the State. P. L. 1941, chs. 290, 291. This law was implemented and somewhat modified in 1942. P. L. 1942, chs. 169, 241. These acts included changes in the tax rates and provided for installment payments of the full principal amount of unpaid property taxes without interest or penalties, which were due on or before December 1, 1940. The statutory settlement of the claims was conditioned on (1) the execution of installment payment plans and the payment of the first installment, and (2) a waiver of all rights to contest the legality or amount of any assessment made prior to December 1, 1941, together with written consent to the discontinuance and dismissal of all pending suits concerning such assessments. The reorganization court authorized petitioner to settle and compromise the delinquent taxes in accordance with the provisions of these acts. Petitioner undertook to comply with the statutory requirements, filing documents and payments required of a delinquent taxpayer, discontinuing litigation, and consenting to the discontinuance of pending appeals.[2] The state officials—the Attorney General, Treasurer, and Comptroller—did not accept these tenders.[3] Instead, the Attorney General instituted suit to enjoin the Treasurer from carrying out the provisions of the 1941 and 1942 acts. The result was a holding that the acts violated the New Jersey constitution. *Wilentz* v. *Hendrickson,* 135 N. J. Eq. 244, 38 A. 2d 199.

---

[2] Delinquencies of subsidiary companies of the debtor were also included.

The 1942 Act increased the 1941 franchise tax of the debtor. The waiver authorized by the reorganization court included a waiver of the right to contest the legality of that additional assessment.

[3] See *In re Central R. Co. of New Jersey,* 136 F. 2d 633, which contains a review of the facts of this episode.

Meanwhile the reorganization court set a time within which all claims against the debtor should be filed. In compliance therewith the State Comptroller filed on behalf of the State of New Jersey a claim for taxes owing it.[4] The proof of claim stated that over $18,000,000 had been paid on the tax claim, leaving unpaid some $12,000,000, plus interest of over $7,700,000, plus additional interest on those sums from December 1, 1940. The proof of claim also stated that under New Jersey law the sums owed were secured by "a lien paramount to all other liens upon all the lands and tangible property and franchises of the company in this State."

The debtor and trustee filed initial objections to the claim. They contended that the property of the debtor was grossly overvalued and that the debtor and other railroads had been intentionally and systematically discriminated against in the making of the assessments. They also objected to the interest or penalty part of the claim, contending, *inter alia,* that no interest accrued after the date when the debtor's petition for reorganization was filed or during the period when collection of the taxes was enjoined and the debtor was in good faith contesting their validity. Subsequently they objected to the claim on the further ground that its amount and the time allowed for its payment were governed by the terms of settlement or compromise tendered under the 1941 and 1942 acts of the New Jersey legislature. They also contended that New Jersey had no lien on the debtor's personal property. Like objections were made by a group of security holders of the debtor and by an indenture trustee. They also objected to the State's claim on the ground that no part of it other than that representing the principal amount of taxes was entitled to a lien equal or paramount to the debtor's general mortgage.

---

[4] Like claims were also filed against subsidiaries of the debtor.

New Jersey, through her Attorney General, filed replies to the various objections which had been made to her claim, stating, *inter alia,* that the principal amount of the claim had been finally adjudicated and was lawfully owing, that the principal amount together with interest was entitled to priority under § 64 of the Bankruptcy Act, and that the claim was entitled to a paramount lien on all the lands, tangible property, and franchises of the debtor.

Shortly after *Wilentz* v. *Hendrickson, supra,* was decided, the trustee filed with the reorganization court a petition for adjudication of New Jersey's tax claims which in substance recapitulated his earlier objections to the claim and asked for an adjudication that the settlement or compromise tendered under the 1941 and 1942 acts of New Jersey was binding; or alternatively, if it was not binding, a determination of the extent to which the claim should be allowed and the relative rights, liens and priorities of the various claimants in the debtor's assets.

The Attorney General of New Jersey thereupon entered a special appearance in the proceedings, claiming, *inter alia,* that the entertainment of the petition would constitute a prohibited suit against the State, both as respects the determination of the amount of the claim and its priority or lien.

The reorganization court referred New Jersey's claim to a special master to consider this additional contention of the State, as well as the previous objections to it and the State's replies thereto.

The special master rendered a report in 1945 in which he found (1) that the proofs of claim of New Jersey were properly filed by state officers acting in pursuance of their statutory authority; (2) that § 77 confers on the reorganization court jurisdiction over the kind of claims asserted by the State in the proceeding and that such construction of the Act is not unconstitutional; and (3) that

the entire property of the debtor is *in custodia legis* sub- ject to the rights of lienholders, and that the reorganization court is the proper court to determine the validity and amount of the tax claims and their lien, subject to the limitations of *Arkansas Corporation Commission* v. *Thompson,* 313 U. S. 132, which he did not think were presently involved in the proceedings. New Jersey, through her Attorney General, filed objections to the report. The reorganization court overruled them and adopted and confirmed the report. New Jersey took an appeal to the Circuit Court of Appeals. She also filed in that court a petition for a writ of prohibition in which she challenged the rulings of the reorganization court on the same grounds.

The Circuit Court of Appeals treated the appeal as if all of the questions presented were covered by *Arkansas Corporation Commission* v. *Thompson, supra.* It held that the "only matters left open" for the reorganization court were (1) mathematical error in the computation of the amount of the tax or (2) legal error in its assessment. It accordingly reversed the order of the reorganization court and dismissed the application for a writ of prohibition. 152 F. 2d 408, 418.

*First.* We think, contrary to the position of New Jersey, that the reorganization court had jurisdiction over the proof and allowance of the tax claims and that the exercise of that power was not a suit against the State. Section 77 deals not only with claims of private parties but with those of public agencies as well. Section 77 (b) defines "creditors" as "all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this Act." And "claims" are defined to include "debts, whether liquidated or unliquidated, securities (other than stock and option warrants to subscribe to stock), liens, or other interests of whatever character."

*Id.* And § 77 (c) (7) provides for the prompt fixing of a reasonable time within which the "claims of creditors" may be filed and the manner in which they may be filed and allowed. The words "all holders of claims" have no qualification and are sufficiently broad to include public agencies as well as private parties. The "claims" of creditors include secured and unsecured claims. We find not the slightest suggestion that Congress left out the large class of tax claims which recurringly appears in reorganizations and often assumes, as here, large proportions. They are expressly included among provable claims in § 57n of the Bankruptcy Act, 52 Stat. 840, 867, 11 U. S. C. § 93 (n).[5] And the sweeping, all-inclusive definitions of "claims" and "creditors" in § 77 leave room for no exception under it.

When a State files a proof of claim in the reorganization court, it is using a traditional method of collecting a debt. A proof of claim is, of course, *prima facie* evidence of its validity. *Whitney* v. *Dresser*, 200 U. S. 532. But the bankruptcy court whose aid is sought for enforcement of an asserted claim is not bound to treat the tendered proof as conclusive. When objections are made, it is duty bound to pass on them. That process is, indeed, of basic importance in the administration of a bankruptcy estate whether the objective be liquidation or reorganization. Without that sifting process, unmeritorious or excessive claims might dilute the participation of the legitimate claimants.

It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. *Wiswall* v. *Campbell*, 93 U. S. 347, 351. If the claimant is a State, the procedure of proof and

---

[5] See H. Rep. No. 1409, 75th Cong., 1st Sess., p. 13; S. Rep. No. 1916, 75th Cong., 3d Sess., pp. 5, 16.

allowance is not transmuted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*. It is none the less such because the claim is rejected *in toto,* reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash. When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim. See *Clark* v. *Barnard,* 108 U. S. 436, 447–448; *Gunter* v. *Atlantic Coast Line,* 200 U. S. 273, 284–289; *Missouri* v. *Fiske,* 290 U. S. 18, 24–25.

The extent of the constitutional authority of the bankruptcy court in this respect was passed upon in *New York* v. *Irving Trust Co.,* 288 U. S. 329. In that case the Court sustained an order of the bankruptcy court which barred a State's tax claim because not filed within the time fixed for the filing of claims. The Court stated, p. 333, "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated."

In the present circumstances there is, therefore, no collision between § 77 and the Constitution.

Nor can we conclude that the claim was not properly filed by the State. The State Comptroller, who filed the claim on behalf of the State, is authorized to "institute and direct prosecution . . . for just claims and debts due to the state." N. J. R. S. § 52:19–10c. And see *id.,* § 52:19–15. The State Attorney General, who resisted the objections made to the claim, is authorized to "attend generally to all matters in which the state is a party or in

which its rights and interests are involved." *Id.*, § 52: 17–2g. The special master, whose report the reorganization court adopted, held that what these officials did in this case was in pursuance of their authority. For that conclusion he relied on the statutes which we have mentioned and the practice in other reorganization proceedings. That construction of New Jersey law made by a federal judge of the New Jersey District Court is entitled to special weight. *Steele* v. *General Mills,* 329 U. S. 433. We find nothing which impeaches it. To hold otherwise might, indeed, imperil the claim which New Jersey so vigorously asserts. For it appears that the time for filing claims has expired and under the rule of *New York* v. *Irving Trust Co., supra,* a filing at this late date might come too late.[6]

*Second.* New Jersey contends that Congress did not include a State's tax liens within the scheme of § 77 proceedings. That is but another way of saying that since the State's asserted liens attached before the reorganization petition was filed, the only property of the debtor *in custodia legis* was its equity after the tax liens were satisfied.

We do not agree with that conclusion. We partially answered the contention when we reviewed the broad, all-

---

[6] See *Meyer* v. *Fleming,* 327 U. S. 161, 169, footnote 18: "Sec. 77 (c) (7) provides that the judge 'shall promptly determine and fix a reasonable time within which the claims of creditors may be filed or evidenced and after which no claim not so filed or evidenced may participate except on order for cause shown . . .' This is the equity rule (5 Collier on Bankruptcy (1944) p. 537) which permits the filing of claims out of time provided the claim is equitable, the claimant is not chargeable with laches, and the assets have not been distributed (see *Conklin* v. *United States Shipbuilding Co.,* 136 F. 1006, 1009–1010; *Pennsylvania Steel Co.* v. *New York City R. Co.,* 198 F. 721, 740–742); and provided further that the late filing does not unduly delay the proceedings. *Guaranty Trust Co.* v. *Henwood,* 86 F. 2d 347, 353."

inclusive nature of the definitions of "creditors" and "claims" contained in § 77 (b). As those definitions make plain, "all holders of claims" include those who assert "liens" against the property of the debtor.

Section 77 (b), moreover, gives the reorganization court broad powers over all types of liens. Thus a plan of reorganization "shall include provisions modifying or altering the rights of creditors generally, or of any class of them, secured or unsecured, either through the issuance of new securities of any character or otherwise." § 77 (b) (1). A plan of reorganization may provide for "the sale of all or any part of the property of the debtor either subject to or free from *any lien* at not less than a fair upset price." § 77 (b) (5). (Italics added.) It may order "the distribution of all or any assets, or the proceeds derived from the sale thereof, among those having an interest therein." *Id.* Or it may provide for "the satisfaction or modification of *any liens*" or "the curing or waiver of defaults." *Id.* (Italics added.) This is comprehensive language suggesting that all liens are included, not that some are beyond the reach of the court. While valid liens existing at the commencement of bankruptcy proceedings have always been preserved, it has long been a function of the bankruptcy court to ascertain their validity and extent and to determine the method of their liquidation. *Whitney* v. *Wenman,* 198 U. S. 539, 552; *Isaacs* v. *Hobbs Tie & Timber Co.,* 282 U. S. 734, 737–738; *Straton* v. *New,* 283 U. S. 318, 321. Moreover, both in receivership cases, *New York* v. *Maclay,* 288 U. S. 290; *United States* v. *Texas,* 314 U. S. 480, and in bankruptcy cases, *Van Huffel* v. *Harkelrode,* 284 U. S. 225; *New York* v. *Irving Trust Co., supra,* the authority of the court to deal with the lien of a State has long been recognized. In reorganization cases the task of resolving disputes as to liens is a common one for the court. See *Institutional Investors* v. *Chicago, M., St. P. &*

*P. R. Co.,* 318 U. S. 523, 569. Indeed, before a plan of reorganization can be designed in accord with fair and equitable requirements, liens must be disentangled and their relative priorities ascertained. This problem, present in most reorganizations, is acute in the railroad field.

If the reorganization court lacked the power to deal with tax liens of a State, the assertion by a State of a lien would pull out chunks of an estate from the reorganization court and transfer a part of the struggle over the corpus into tax bureaus and other state tribunals. That would not only seriously impair the power of the court to administer the estate and adversely affect the power of the Interstate Commerce Commission and the court to promulgate a reorganization plan. See *Ecker* v. *Western Pacific R. Corp.,* 318 U. S. 448, 466–475; *Smith* v. *Hoboken Railroad, W. & S. C. Co.,* 328 U. S. 123. It would fly in the teeth of § 77 (a), which grants the reorganization court "exclusive jurisdiction of the debtor and its property wherever located." That jurisdiction is not limited to the prevention of interference with the use of the property by the trustee; it "extends also to the adjudication of questions respecting the title." *Ex parte Baldwin,* 291 U. S. 610, 616; *Thompson* v. *Texas Mexican Ry. Co.,* 328 U. S. 134, 140. It is the exclusive jurisdiction of the reorganization court which gives it power to preserve the railway as a unit and as a going concern and to prevent it from being divided up and dismembered piecemeal. Only in that way can continuous operation of the road be assured and a plan of reorganization be effected which not only safeguards the interests of the various claimants but is also compatible with the public interest. *Continental Bank* v. *Chicago, R. I. & P. R. Co.,* 294 U. S. 648; *Smith* v. *Hoboken Railroad, W. & S. C. Co., supra.*

When § 77 is read against this historical background and in light of practical requirements, we cannot conceive that

Congress gave the reorganization court power less replete than the sweeping language of § 77 suggests.

The constitutional authority of Congress to grant the bankruptcy court power to deal with the lien of a State has been settled. In *Van Huffel* v. *Harkelrode, supra,* the Court held that the bankruptcy court was constitutionally empowered to order a sale of property of a bankrupt free and clear of a lien of a State for taxes.

We hold that the reorganization court has jurisdiction over all of the property of the debtor, including that on which New Jersey asserts a lien, and that the power of the court to deal with liens extends to the lien which New Jersey claims.[7]

*Third.* We held in *Arkansas Corporation Commission* v. *Thompson, supra,* that the reorganization court lacked the power under § 77 to redetermine for state tax purposes the property value of a railroad where that value had already been determined in state proceedings which afforded ample protection to the railroad's rights. We adhere to that decision. Its ruling precludes redetermination by the reorganization court in this case of the valuations underlying the assessments made by the state authorities and the validity of those assessments used as the basis for the computation of the taxes. It may not therefore entertain the objections to New Jersey's claim which tender those issues. The proper tribunals where

---

[7] Section 64a of the Bankruptcy Act determines the priority to which taxes owing a State are entitled and grants the bankruptcy court power to determine questions concerning "the amount or legality of any taxes." In *Arkansas Corporation Commission* v. *Thompson, supra,* we reserved decision on whether § 64a was applicable in reorganizations under § 77. We do not reach that question here. For § 77 alone is adequate to sustain the asserted jurisdiction of the reorganization court over all the property of the debtor. See *Lyford* v. *City of New York,* 137 F. 2d 782, 785–786.

those issues may be litigated, if they are still open for any year, are the state agencies and courts and, under special circumstances, the federal courts. *Hillsborough* v. *Cromwell,* 326 U. S. 620. The Circuit Court of Appeals has reviewed at length the New Jersey procedure available for challenging the valuations which underlie assessments. 152 F. 2d pp. 411–414. By the standards of *Arkansas Corporation Commission* v. *Thompson, supra,* that procedure is adequate, so that relitigation of the question in the reorganization proceedings would not be appropriate.

*Fourth.* The rule of *Arkansas Corporation Commission* v. *Thompson, supra,* does not, however, preclude the reorganization court from adjudicating the other issues raised by the objections to New Jersey's claim. The contrary view, which the Circuit Court of Appeals apparently took, fails to recognize historic bankruptcy powers which, as we have already pointed out,[8] are part of the arsenal of authority granted the reorganization court by § 77.

(1) The validity and priority of one lien, whether or not claimed by a State, as against other liens, are questions for the reorganization court. Illustrating but not limiting the range of that inquiry are questions whether local law creates the lien asserted; whether it was sufficiently perfected prior to the petition for reorganization as to be good against other liens, *cf. New York* v. *Maclay, supra; United States* v. *Texas, supra;* whether, if it were inchoate at that time, it could be perfected subsequent to the petition, *Lyford* v. *State of New York,* 140 F. 2d 840; and whether the lien, though paramount, is subordinate

---

[8] As stated in *Isaacs* v. *Hobbs Tie & Timber Co., supra,* p. 738, "while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation."

to administration expenses or other claims under either the general bankruptcy rule, *City of New York* v. *Hall,* 139 F. 2d 935, or the equity rule,[9] 5 Collier on Bankruptcy (14th ed.) ¶ 77.21. See *Warren* v. *Palmer,* 310 U. S. 132.

(2) The extent of the lien—to what property it applies, and whether it is restricted to realty or covers personal property or revenues as well—are also questions for the reorganization court. See *Ecker* v. *Western Pacific R. Corp., supra,* pp. 489, 503.

(3) The reorganization court may also adjudicate questions pertaining to the amount of a tax claim secured by a lien without crossing the forbidden line marked by *Arkansas Corporation Commission* v. *Thompson, supra.* There is, for example, the question whether the amount of the claim has been swollen by the inclusion of a forbidden penalty and thus to that extent does not meet the bankruptcy requirements for proof and allowance of claims. Section 57j of the Bankruptcy Act provides that debts owing a State as a "penalty or forfeiture"[10] shall not be allowed. What claims accruing before bankruptcy and sought to be proved by a State are "penalties," *New York* v. *Jersawit,* 263 U. S. 493, and what are not, *Meilink* v. *Unemployment Reserves Commission,* 314 U. S. 564; the applicability of

---

[9] Section 77 (a) provides that if the petition is approved the reorganization court "during the pendency of the proceedings under this section and for the purposes thereof, . . . shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose."

[10] Section 57j reads in full:

"Debts owing to the United States or any State or subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued thereon according to law."

§ 57j to reorganizations under § 77;[11] the liability of the estate for penalties incurred by the trustee in the operation of the business, *Boteler* v. *Ingels,* 308 U. S. 57; what interest, if any, accrues after the petition for reorganization has been filed, *Vanston Committee* v. *Green,* 329 U. S. 156, are all questions for the reorganization court.

(4) We noted in *Case* v. *Los Angeles Lumber Products Co.,* 308 U. S. 106, 130, that one useful and fitting function of a reorganization court was the compromise or settlement of claims, so that interminable litigation might be ended and the interests of expedition in promulgating a plan of reorganization served. That power, expressly included in the Bankruptcy Act[12] and governed by our General Order No. 33,[13] is part of the broad authority granted the reorganization court by § 77.[14] Through the appro-

---

[11] Section 77 (l) provides:

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

[12] Section 27 provides:

"The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." 52 Stat. 855.

[13] General Order No. 33 provides:

"Whenever a receiver, trustee or debtor in possession shall make application to the court for authority to submit to arbitration any controversy arising in the settlement of an estate, or for authority to compromise any such controversy, the application shall clearly and distinctly set forth the subject matter of the controversy, and the reasons why it is proper and for the best interest of the estate that the controversy should be settled by arbitration or compromise." 305 U. S. 696.

[14] See § 77 (l), note 11, *supra,* and § 77 (a), note 9, *supra.*

priate exercise of that power, the court may authorize the trustee to compromise claims, secured or unsecured, and may approve equitable adjustments of them, and so reduce or otherwise affect the participation that the claimant, whether a State or another, may have in the *res* which is *in custodia legis.*

It is urged in this case that the settlement and compromise of New Jersey's tax claim which the reorganization court authorized the trustee to make under the so-called settlement acts of the New Jersey legislature of 1941 and 1942 was an appropriate exercise of that power; that the compromise was valid and binding under New Jersey law; and that even if the compromise was not valid, payments made by the trustee and the conduct of the parties have altered the claim as respects the lien, the principal amount of the claim, and the interest or penalty portion of it. New Jersey vigorously contests all and each of these contentions.

A phase of this controversy was before the Circuit Court of Appeals in *In re Central R. Co. of New Jersey, supra.* That court had before it on appeal the order of the reorganization court (entered prior to the decision in *Wilentz* v. *Hendrickson, supra,* holding the acts of 1941 and 1942 unconstitutional) which, on the basis of the compromise, allowed New Jersey's claim only in a reduced amount. The Circuit Court of Appeals held (1) that it would have been more appropriate for the reorganization court to have stayed its hand pending determination of the state litigation and (2) that, in any event, it should not have passed on the constitutionality of the 1941 and 1942 acts without giving New Jersey an opportunity for a hearing and argument on the issue. This controversy is now in a different posture. New questions of local law emerge—whether *Wilentz* v. *Hendrickson, supra,* controls this case; whether a valid settlement can be made under an

unconstitutional act and, if so, whether this alleged compromise was valid and effective; whether, if the settlement was not binding, the amount of the claim or the extent of the lien has been altered by the payments made during reorganization or by the conduct of the parties.

These points have been briefed and argued here. The difficulty is that neither the reorganization court nor the Circuit Court of Appeals passed on them. The reorganization court passed solely on a question of jurisdiction—whether it had the power to make adjudications concerning the amount of New Jersey's claim which should be allowed and the validity and extent of her lien, or whether New Jersey's sovereign immunity stood in the way of such determinations. And the Circuit Court of Appeals did not pass on these questions because it, too, was concerned solely with the question of jurisdiction.

These issues bristle with questions of New Jersey law on which we should not pass, even if we were to assume they are properly here, without the benefit of the views of judges who sit there and have a greater familiarity with local law and local practices than we. See *Huddleston* v. *Dwyer,* 322 U. S. 232, 237; *Brillhart* v. *Excess Insurance Co.,* 316 U. S. 491, 497; *Hammond* v. *Schappi Bus Line,* 275 U. S. 164, 169; *Wilson Cypress Co.* v. *Del Pozo,* 236 U. S. 635, 656–657. And for a review of the earlier cases, see dissenting opinion of Mr. Justice Brandeis in *Railroad Commission* v. *Los Angeles R. Co.,* 280 U. S. 145, 164–165. Moreover, we are now advised that there is presently pending before the Circuit Court of Appeals an appeal by the Attorney General of New Jersey from an order of the reorganization court denying leave to join the trustee as party defendant in a suit in the New Jersey courts to determine whether there was a valid settlement of the tax claims and to stay further determination of that controversy in the federal court until the state courts have

passed on the question.[15]   If the Circuit Court of Appeals orders the application granted, cf. *Thompson* v. *Magnolia Petroleum Co.*, 309 U. S. 478, 483; *Ex parte Baldwin, supra,* p. 619, the state law phases of the controversy will be authoritatively settled.   If the other course is followed, the issues can be resolved by the reorganization court on a record more adequate than the present one for purposes of review.   Whatever procedure is followed, it is more fitting that those more versed than we in the intricacies and niceties of New Jersey law first pass on these questions.

We intimate no opinion on the merits of the settlement controversy.   Nor do we intimate any view on the amount of the tax claim which should be allowed or on the validity, character, priority, or extent of the lien asserted by New Jersey, or on the manner in which it should be satisfied in a plan for reorganization.   We only hold that the reorganization court could properly entertain all objections to the claim except those involving the valuations underlying the assessments and the validity of those assessments.

On the present record we do not know all the issues that were involved in the prolonged litigation concerning the taxes for the years in question.   Hence, what we have said is subject to the limitation that *res judicata* may have made binding on the reorganization court various questions of local law, including the amount and validity of the taxes under New Jersey law and the character and extent of the lien which that law affords them.

We affirm in part and reverse in part the judgment of the Circuit Court of Appeals and remand the cause to the District Court for further proceedings in conformity with this opinion.

*So ordered.*

---

[15] *New Jersey et al.* v. *Central Railroad Co. of New Jersey,* No. 8808. We are advised that by stipulation of the parties the case is being held in the Circuit Court of Appeals until the jurisdictional question involved in the instant case has been decided.