In re: Melvin J. WHITE, Debtor.

## CONFEDERATED TRIBES OF THE COLVILLE RESERVATION TRIBAL CREDIT, Appellant,

v.

Melvin J. WHITE, Appellee.

No. 96–36294.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1998.

Decided March 23, 1998.

Alan C. Stay, Office of the Reservation Attorney, Nespelem, WA, for appellant.

John F. Bury, Murphy, Bantz & Bury, P.S., Spokane, WA, for appellee.

Before: BRUNETTI, RYMER and KLEINFELD, Circuit Judges.

RYMER, Circuit Judge.

Colville Tribal Credit, an agency of the Confederated Tribes of the Colville Reservation which administers the collection of loans to tribal members and had sought to collect a debt of Melvin J. White in White's Chapter 11 reorganization, appeals the district court's order affirming discharge of its claim under Chapter 7. The district court held that Colville Credit submitted to the jurisdiction of the bankruptcy court when it sought to collect White's debt under Chapter 11, that this affirmative act waived its immunity as to the bankruptcy court's jurisdiction over its ability to collect White's debts, and that the waiver survived conversion to Chapter 7.

We agree with the district court and hold that the Tribes's participation as a creditor in White's bankruptcy case under Chapter 11 waived immunity from adjudication of its claim, and that waiver carried forward to Chapter 7. As we have jurisdiction, 28 U.S.C. § 158(d), we affirm.

I

The Confederated Tribes of the Colville Reservation (Colville Tribes) is a federally recognized Indian tribal government. Colville Tribal Credit (Colville Credit) is a Col-

ville Tribes agency that administers the lending of trust monies to tribal members and the collection of tribal trust monies owed to Colville Tribes by tribal members. Colville Credit uses tribal trust funds derived from the Tribes's treasury to make loans available only to tribal members at below-market rates.

Melvin J. White, an enrolled member of Colville Tribes, took advantage of Colville Credit's loan program. Colville Credit loaned White approximately $340,000 and, to ensure repayment on the loan, took a security interest in White's entitlement to dividends from the tribal trust fund. White, however, subsequently filed for bankruptcy under the reorganization provisions of Chapter 11.

White proposed a reorganization plan and, through its private attorneys hired to collect White's debts, Colville Tribes filed an objection to the confirmation of this plan as "one of the Class 6 Unsecured Creditors herein holding a claim in the sum of $336,858.18." The Tribes objected to the plan because it believed that White had not filed the plan in good faith, as required by 11 U.S.C. § 1129(a)(3). Colville Tribes also filed a ballot rejecting the initial reorganization plan which placed its interest in "Class 6." After White amended his plan, the Tribes filed a ballot rejecting the amended plan as well.

White then converted his case from a Chapter 11 reorganization to a Chapter 7 liquidation and was granted a discharge. Colville Credit filed an adversary proceeding contesting the dischargeability of its claim against White. In moving for summary judgment, Colville Credit argued that sovereign immunity precluded the bankruptcy court from asserting jurisdiction over its claims and asked the bankruptcy court to remove it from the list of creditors. The bankruptcy court refused to do so, holding that Colville Credit's objection to, and ballots rejecting the confirmation of, White's reorganization plan were affirmative acts to collect a particular debt in a bankruptcy proceeding. The court concluded that these acts submitted the issue of whether Colville Credit could

collect White's debts to the jurisdiction of the court and Colville Credit had accordingly waived sovereign immunity as to that issue. The district court affirmed, and Colville Credit timely appealed.[1]

## II

Colville Credit's position is that no matter what actions it took in White's case under Chapter 11, and regardless of whether those actions waived sovereign immunity for purposes of the reorganization, it could not (and had no authority to) waive sovereign immunity once the case was converted from Chapter 11 to Chapter 7. Specifically, it argues that the Colville Tribal representative who filed papers in the case under Chapter 11 lacked authority to waive sovereign immunity. But even if waiver were authorized for purposes of Chapter 11, Colville Credit submits, its participation in White's Chapter 11 does not constitute a waiver of sovereign immunity for purposes of Chapter 7 because the two are different, and separate, proceedings and White's Chapter 7 was subsequent to his Chapter 11. In any event, the Tribes maintains, a waiver would violate its right to make laws and be governed by them.

White responds that participating as a creditor in plan confirmation, like filing a proof of claim, waives immunity from the adjudication of allowance and dischargeability of the debt. He further argues that a bankruptcy case that starts as a Chapter 11 is the same case after conversion to Chapter 7. Finally, White points out that as a United States citizen, he is entitled to protection of the federal bankruptcy laws, and that Colville Credit's right to seek relief in tribal court is not at issue in this action.

### A

We turn first to whether Colville Credit's participation in White's Chapter 11 waived sovereign immunity respecting the adjudication of its claim against White's assets.

---

1. White did not appeal the district court's alternative holding that § 106 of the Bankruptcy Code did not abrogate tribal immunity. There-

fore, that issue is not before us and we express no view on whether an Indian Tribe is a "governmental unit" for purposes of § 106(a) or (b).

■ No one disputes that Colville Credit, as an administrative arm of a tribal sovereign, enjoys common law immunity from suit. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1676–77, 56 L.Ed.2d 106 (1978); *In re Greene*, 980 F.2d 590, 596–97 (9th Cir.1992) (holding that tribe's wholly owned commercial business enjoyed sovereign immunity). However, Indian tribes may consent to suit without explicit Congressional authority. *United States v. Oregon*, 657 F.2d 1009, 1013 (9th Cir.1981). Such waiver may not be implied, but must be expressed unequivocally. *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir.1989). Initiation of a lawsuit is an action that "necessarily establishes consent to the court's adjudication of the merits of that particular controversy," *id.* at 630, including the risk of being bound by an adverse determination. *Id.; Oregon*, 657 F.2d at 1014.

The Supreme Court made clear in *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), that when a sovereign files a claim against a debtor in bankruptcy, the sovereign waives immunity with respect to adjudication of the claim. In *Gardner*, New Jersey filed a proof of claim for unpaid taxes in Gardner's reorganization. Gardner objected to the claim and filed a petition for adjudication of New Jersey's tax claims in accordance with his objection. New Jersey countered that the court couldn't entertain the petition because it would be a prohibited suit against the state. The Court disagreed, noting that when a state files a proof of claim, "it is using a traditional method of collecting a debt." *Id.* at 573, 67 S.Ct. at 471. As the Court explained:

It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*. It is none the less such because the claim is rejected *in toto*, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash. When the State becomes an actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Id.* at 573–74, 67 S.Ct. at 472 (citations omitted).

It follows from *Gardner* that Colville Credit's actions waived its immunity respecting the adjudication of its claim to recover White's debts. Like New Jersey, Colville Credit sought to collect its debt by actively participating in the reorganization court. It acknowledged that it had a claim, objected to confirmation of White's plan of reorganization because it thought it was entitled to more than the plan would have allowed, and it sought relief from the bankruptcy court in the form of an order denying confirmation. It twice voted against plans of reorganization. Having done this, Colville Credit (like New Jersey) "waive[d] any immunity which it otherwise might have had respecting the adjudication of the claim."

**B**

■ If that's so, Colville Credit argues, the waiver was without authority because an agent of the Tribes cannot waive sovereign immunity by filing a proof of claim in a Chapter 11 reorganization, at least not without an express and clear waiver supporting that action by the governing body of the Tribes. There is nothing in the record, however, that suggests what tribal approvals are necessary, or that indicates whether any approval is in fact required. In any event, the Tribes expressly acknowledged in its adversary proceeding and again on appeal that Colville Credit is an agency of the Tribes which administers the lending of tribal trust monies to tribal members and the collection of tribal trust monies owed to the Tribes by tribal members. That shows that the claim was properly filed by Colville Credit.

Colville Credit also argues that *United States v. Murdock Mach. and Eng'g Co.*, 81 F.3d 922 (10th Cir.1996), is dispositive, but we disagree. In *Murdock*, a government

contractor filed for bankruptcy, the United States then terminated certain contracts with the debtor, and the United States later filed a proof of claim against the debtor based on these contracts. The debtor argued that by filing a proof of claim, the United States waived its immunity from injunctive relief under the automatic stay provisions of the Bankruptcy Act of 1898. *Id.* at 928. The Tenth Circuit disagreed, holding that as only Congress could waive the United States's immunity, the government did not waive its sovereign immunity from injunctive relief by filing a proof of claim. *Id.* at 932–33. By contrast here, there is no question of extending the Tribes's waiver beyond adjudication of the claim itself, and thus Colville Credit's reliance upon *Murdock* is misplaced.

### C

■ The question then becomes whether Colville Credit's waiver rendered it vulnerable to liquidation as well as reorganization. It says no, principally because the Tribes's interests in protecting the corpus of Tribal trust property were furthered by participating in the Chapter 11 reorganization while preserving sovereign immunity for purposes of Chapter 7. Colville Credit argues that the nature of Chapter 11 and Chapter 7 are so different that White effectively started a new case when he switched from a reorganization to a liquidation, and that this new case required a new waiver of immunity. It is not possible to assume that the Tribes would knowingly waive the ability to enforce its security in a tribal court by waiving immunity in Chapter 11. Instead, Colville Credit contends, it was entitled to raise immunity as a defense in the same way that a new creditor could assert a defense to a Chapter 7.

*Gardner* again informs the answer, for when Colville Credit made itself an actor in White's bankruptcy case, it invited adjudication of a claim against the estate that it was trying to collect but the debtor was trying to get discharged. Discharge was the object of the exercise, if not through Chapter 11, then through Chapter 7. Colville Credit asked the court to deny confirmation of the plan, and twice voted against it. The inevitable consequence was discharge under Chapter 7 instead of Chapter 11.

Colville Credit points to new procedures that accompany a conversion to Chapter 7 as support for its argument that its waiver of immunity did not carry over to White's Chapter 7. *See generally* 11 U.S.C. § 348(b) and (c); Fed. R. Bankr.P. 1019. Regardless of new procedures, however, the substantive consequences of Colville Credit's pursuing its claim against White's estate remained the same. As recognized by our Bankruptcy Appellate Panel, conversion under the Bankruptcy Code "should not be read as a nullification act. It is not designed to change what has gone before but, rather, to leave matters as they existed on the date of conversion." *In re Ramirez*, 188 B.R. 413, 415 (9th Cir. BAP 1995) (citation and quotation omitted).

Knowing that White could convert his reorganization into a liquidation at any time, Colville Credit nevertheless submitted its claim to the jurisdiction of the bankruptcy court for adjudication. That waived sovereign immunity for the case for that claim. Like any creditor, Colville Credit must "abide by the consequences" of choosing to assert a claim in White's bankruptcy, *Gardner*, 329 U.S. at 573, 67 S.Ct. at 472, and cannot reclaim immunity just because the case took a turn that was not to its liking. *Oregon*, 657 F.2d at 1014.

■ In further support of its contention that participation in the prior Chapter 11 reorganization should not carry over to the issues in a Chapter 7 liquidation brought after it entered White's bankruptcy, Colville Credit relies on the general rule that a tribe's waiver of sovereign immunity is only valid in the particular proceeding in which the waiver is knowingly and expressly given. *See, e.g., McClendon*, 885 F.2d at 630; *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1100 (9th Cir.1994), and *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir.1994). These cases are unhelpful, however, as they have to do with whether a waiver of sovereign immunity in one action with one set of parties or issues extends to a different action with different issues or parties. Here, the case is the same, the parties are the same, the debt is the same, and the issue is the same. The

only difference is how, and how much of, Colville Credit's claim will be discharged.

We therefore agree with the district court that White's conversion does not constitute the commencement of a new case for purposes of sovereign immunity but merely represents a change in the statutory chapter pursuant to which the case would proceed. Colville Credit's waiver of immunity did not expire, nor was its scope extended, upon White's conversion from Chapter 11 to Chapter 7. Instead, by asserting its claim as a creditor in White's bankruptcy, Colville Credit waived its tribal immunity with respect to adjudication of that claim, no matter what chapter ultimately controlled the discharge of White's debts.

### D

Colville Credit also urges that approving a waiver of sovereign immunity as a result of the Tribes's participation in White's reorganization will affect the Tribes's ability to carry out its loan program. It notes that this case involves the relationship between an enrolled Indian and the Tribes, and arises from events occurring on the reservation. Finally, Colville Credit suggests that its program depends on the ability of the Tribes to use its courts to enforce this debt.

While there is no question that the federal bankruptcy laws and tribal sovereignty may sometimes be in tension, that cannot affect the outcome in this case. We can't say how this will play out, if at all, in tribal court, because that's not before us. But, contrary to its view, Colville Credit's waiver was express—not implied—under *Gardner*. Having participated as a creditor in White's bankruptcy case under Chapter 11, the Tribes waived immunity for adjudication of its claim under Chapter 7 as well.

AFFIRMED.