In re WCI CABLE, INC., World Net Communications, Inc., Alaska Fiber Star, L.L.C., Alaska Northstar Communications, L.L.C., WCI Lightpoint, L.L.C., WCIC Hillsboro, L.L.C., Debtors-in-Possession.

WCI Cable, Inc., World Net Communications, Inc., Alaska Fiber Star, L.L.C., Alaska Northstar Communications, L.L.C., WCI Lightpoint, L.L.C., WCIC Hillsboro, L.L.C., Plaintiffs,

v.

Alaska Railroad Corporation, Alaska Railroad Corporation Board of Directors; Patrick Gamble, in his official capacity as President and CEO of Alaska Railroad Corporation; and Jacob Adams, Edward L. Bauer, Jr., Johne Binkley, Jack Burton, Carl H. Marrs, Joe Perkins, Deborah Sedwick in their official capacity as members of the Board of the Alaska Railroad Corporation, Defendants.

Bankruptcy Nos. 301–38242–RLD11 to 301–38247–RLD11.

Adversary No. 01–3407–RLD.

United States Bankruptcy Court, D. Oregon.

Feb. 1, 2002.

Fred M. Granum, Portland, OR, for plaintiffs.

Mary Jo Heston, Seattle, WA, Fredric W. Kessler, Los Angeles, CA, for defendants.

## MEMORANDUM OPINION

RANDALL L. DUNN, Bankruptcy Judge.

This matter was heard (the "Hearing") on Tuesday, January 15, 2002, on the Motion of Defendants Alaska Railroad Corporation, its President and CEO and the members of its Board of Directors (collectively referred to as the "Alaska Railroad Corporation") to Dismiss for Lack of Jurisdiction based on Defendants' Sovereign Immunity (the "Motion to Dismiss"). Following the Hearing, I have reviewed my notes, the parties' submissions and relevant legal authorities. The findings that I set forth in this Memorandum Opinion are designated as the court's findings under Fed.R.Civ.P. 52(a), applicable in this adversary proceeding (the "Adversary Proceeding") under Fed.R.Bankr.P. 7052.

## FACTUAL BACKGROUND

The Plaintiffs WCI Cable, Inc., Worldnet Communications, Inc., Alaska Fiber Star, L.L.C., Alaska Northstar Communications, L.L.C., WCI Lightpoint, L.L.C., and WCI Hillsboro, L.L.C. (collectively referred to as the "WCI Group") are an affiliated group of corporate entities that own and operate a 2,000 route-mile fiber optic telecommunications network that links various points in the Pacific Northwest from Seattle, Washington to Portland, Oregon to Anchorage and Fairbanks, Alaska. This network includes cable landing stations, co-location facilities, maintenance and monitoring equipment, and perhaps most important for purposes of the Adversary Proceeding, vast quantities of fiber optic cable laid over lengthy terrestrial and submarine routes.

The WCI Group has installed, maintains and uses its fiber optic cable between Anchorage and Eielson Air Force Base (the "Northern Route") and between Anchorage and Whittier (the "Southern Route") in Alaska pursuant to two "Transportation Corridor Permits" (the "Permits") with the Alaska Railroad Corporation, which owns the rights of way. Under the Permits, the fee for the WCI Group's use of the Northern Route right of way is $150,220 per month, or a total of $1,802,640 per year, and the fee for the WCI Group's use of the Southern Route right of way is $297,320 per year, payable in quarterly installments of $74,330. The WCI Group's payment obligations under the Permits represent a heavy financial burden that the WCI Group would like to lessen.

Pursuant to Alaska Stat. § 42.40.010 et seq. (the "Statutes"), the Alaska Railroad Corporation has required the WCI Group to pay market-based rental or permit fees and to submit to certain other requirements under the Permits. The WCI

Group alleges in the Complaint (the "Complaint") filed in the Adversary Proceeding that the fees charged under the Permits and said other requirements are anti-competitive and violate Section 253 of the Federal Telecommunications Act of 1996 (the "Federal Telecommunications Act"). In the Complaint, the WCI Group seeks a declaratory judgment that the Statutes and the Permits are preempted by Section 253 of the Federal Telecommunications Act and injunctive relief to prevent the Alaska Railroad Corporation from enforcing them. In effect, filing the Adversary Proceeding represents a strategic step taken by the WCI Group on the road go hoped-for fee relief under the Permits.

The individual members of the WCI Group filed chapter 11 bankruptcy petitions on August 20, 2001. Their bankruptcy cases have been administratively but not substantively consolidated.

On August 22, 2001, the WCI Group filed a motion for use of cash collateral (the "Cash Collateral Motion") in the WCI Cable, Inc. main case, followed on August 24, 2001, by the filing of a motion to extend the time for assumption or rejection of non-residential real property leases (the "Motion to Extend"). The Cash Collateral Motion and the Motion to Extend are referred to collectively herein as the "Motions." The only reference to the Alaska Railroad Corporation in the Motions is in a footnote to the Cash Collateral Motion that states: "These projections do not include any right of way costs regarding Alaska Railroad Corporation."

■ Nevertheless, on September 13, 2001, the Alaska Railroad Corporation filed with the court its objection to the Motions (the "Objection"), including a request for adequate protection, supported by the Declaration of William Hupprich, Associate General Counsel of the Alaska Railroad Corporation. Specifically, in the Objection, the Alaska Railroad Corporation 1) requested this court to condition the granting of the Motion to Extend on the WCI Group's "making of the payments due and owing" under the Permits (Objection, p. 4); 2) requested the court to "order the [WCI Group] to comply with Section 365(d)(3) [of the Bankruptcy Code] as a condition of extending the time to assume or reject" the Permits (Objection, p. 5);[1] 3) argued that unpaid rent or fees under the Permits should be treated as costs of administration under Section 503(b) of the Bankruptcy Code by this court (Objection, p. 6);[2] and 4) requested this court to require the WCI Group "to provide adequate protection [to the Alaska Railroad Corporation] in the form of its contractual payments" under the permits (Objection, p. 7). The Alaska Railroad Corporation concluded its Objection as follows:

> The Debtors' requested relief in the [Motion to Extend] and the Cash Collateral Motion should be denied unless the Debtors make the payments under the [Permits] as required under Section

---

1. 11 U.S.C. Section 365(d)(3) provides in relevant part that "[t]he trustee [in chapter 11, the debtor-in-possession] shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." The position of the Alaska Railroad Corporation in the Objection was that the Permits are "true leases" for purposes of Section 365 of the Bankruptcy Code, and the WCI Group should be required to pay the "rent" thereunder as a condition to extending the time to assume or reject the Permits.

2. In chapter 11, allowed claims for costs of administration must be paid in full no later than the effective date of any confirmed plan of reorganization or liquidation, unless the holder of such a claim consents to other treatment. 11 U.S.C. Section 1129(a)(9)(A).

365(d)(3). Alternatively, the Debtors should be required to make such lease payments in order to avoid the accrual of unpaid post petition administrative expenses and as a form of adequate protection.

Objection, p. 8.

At the initial hearing on the Motions, held on September 19, 2001 (the "Initial Hearing"), counsel for the WCI Group stated orally that the WCI Group believed that the Federal Telecommunications Act provided a defense to requiring that payments be made as provided for under the Permits. Counsel further stated that the WCI Group intended to file an adversary proceeding to pursue such claims. The court set over the hearing on the Alaska Railroad Corporation's request for adequate protection to October 24, 2002.

Following the Initial Hearing, the WCI Group and the Alaska Railroad Corporation entered into negotiations and arrived at an interim agreement pursuant to which the WCI Group paid the Alaska Railroad Corporation $150,220, and the Alaska Railroad Corporation withdrew its objections to the Motions. The Order granting the Motion to Extend that was entered by the court on or about November 2, 2001, contains the following provision:

> IT IS FURTHER ORDERED that the Debtors' agreement to pay [the Alaska Railroad Corporation] $150,220 in partial payment of its obligations under the Transportation Corridor Permit for the use of the [Alaska Railroad Corporation] right-of-way from Anchorage to Eielson Air Force Base shall be without prejudice to the rights of [the Alaska Railroad Corporation] or the Debtors to assert any claim, defense, offset or other legal right in relation to the Debtors, [the Alaska Railroad Corporation] or the agreements executed between various Debtors and [the Alaska Railroad Cor-

poration] in the context of future proceedings or motions.

At the continued hearing on October 24, 2002, the Alaska Railroad Corporation withdrew the Objection, without prejudice to renewal, and counsel for WCI Group advised the court that the WCI Group would be filing an adversary proceeding shortly to frame the issues to be resolved between the WCI Group and the Alaska Railroad Corporation. Thereafter, the WCI. Group filed their Complaint in the Adversary Proceeding, and the Alaska Railroad Corporation filed the Motion to Dismiss.

### LEGAL ANALYSIS

■ Sovereign immunity is an affirmative defense, upon which the party seeking its benefits bears the burden of proof by a preponderance of the evidence. *See Hill v. Blind Indus. and Servs. of Maryland,* 179 F.3d 754 (9th Cir.1999), *amended by* 201 F.3d 1186 (9th Cir.2000); *ITSI TV Productions, Inc. v. Agricultural Ass'n,* 3 F.3d 1289, 1291–92 (9th Cir.1993).

■ The Ninth Circuit has held that the Alaska Railroad Corporation is "an arm of the state" of Alaska and is entitled to assert immunity as a sovereign entity under the Eleventh Amendment to the United States Constitution. *See Alaska Cargo Transport, Inc. v. Alaska Railroad Corp.,* 5 F.3d 378, 380–82 (9th Cir.1993); Alaska Stat. § 42.40.010:

> There is established the Alaska Railroad Corporation. The corporation is a public corporation and is an instrumentality of the state within the Department of Community and Economic Development. The corporation has a legal existence independent of and separate from the state. The continued operation of the Alaska Railroad by the corporation as provided in this chapter is considered an

essential government function of the state.

However, the defense of sovereign immunity can be waived "by conduct that is incompatible with an intent to preserve that immunity." *Hill v. Blind Indus. and Servs. of Maryland*, 179 F.3d at 758. *See also Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883). I find that the Alaska Railroad Corporation has waived the defense of sovereign immunity with respect to the issues raised in the Adversary Proceeding, based upon the following analysis.

Generally, a sovereign entity will be found to have waived its immunity from suit in federal court if it voluntarily invokes the jurisdiction of the federal court or submits a "clear declaration" that it intends to submit itself to federal court jurisdiction. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76, 681 n. 3, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), *citing Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947) ("*Gardner* ... stands for the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts."). The Alaska Railroad Corporation has made no clear declaration submitting itself or its officers or directors to the jurisdiction of this court. My finding that the Alaska Railroad Corporation has waived sovereign immunity in this Adversary Proceeding is based on its invocation of the jurisdiction of this court.

Certain conduct by states and their instrumentalities has long been held to waive sovereign immunity in the bankruptcy context. By filing a proof of claim, a state waives sovereign immunity with respect to litigation of issues to determine the amount of its claim. *See, e.g., Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *California Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1048–50 (9th Cir.1999). The Alaska Railroad Corporation has not filed a proof of claim(s) in the WCI Group chapter 11 cases. However, the Ninth Circuit has held that conduct independent of filing a proof of claim may invoke the jurisdiction of the bankruptcy court and thus waive sovereign immunity.

*Confederated Tribes of the Colville Reservation Tribal Credit v. White (In re White)*, 139 F.3d 1268 (9th Cir.1998), concerned the efforts of an agency ("Colville Credit") of the Confederated Tribes of the Colville Reservation (the "Colville Tribes") to avoid the discharge of a debt of a member of the Colville Tribes in chapter 7 bankruptcy. Melvin J. White had borrowed $340,000 from Colville Credit. Mr. White subsequently filed bankruptcy under chapter 11 of the Bankruptcy Code. While the record discussed in the decision of the Ninth Circuit does not reflect that Colville Credit ever filed a proof of claim in Mr. White's bankruptcy case, Colville Credit did file an objection to Mr. White's chapter 11 plan as a creditor with an unsecured claim and filed ballots rejecting both Mr. White's initial and amended plans. *Id.* at 1270. Mr. White then converted his bankruptcy case to chapter 7, and Colville Credit filed an adversary proceeding, requesting a determination that Mr. White's debt to Colville Credit was nondischargeable. In a motion for summary judgment in the adversary proceeding, Colville Credit asserted that sovereign immunity precluded the bankruptcy court from taking jurisdiction over its claim and requested the bankruptcy court to remove its name from the list of creditors. *Id.*

There was no dispute that Colville Credit, "as an administrative arm of a tribal sovereign," possessed common law immu-

nity from suit. *Id.* at 1271. However, the bankruptcy court declined to grant summary judgment in Colville Credit's favor, and the Ninth Circuit affirmed its holding, based upon Colville Credit's conduct waiving its immunity.

> ... Colville Credit's actions waived its immunity respecting adjudication of its claim to recover White's debts.... Colville Credit sought to collect its debt by actively participating in the reorganization court. It acknowledged that it had a claim, objected to confirmation of White's plan of reorganization because it thought it was entitled to more than the plan would have allowed, and it sought relief from the bankruptcy court in the form of an order denying confirmation. It twice voted against plans of reorganization. Having done this, Colville Credit ... "waive[d] any immunity which it otherwise might have had respecting the adjudication of the claim."

*Id. Cf. Goldberg v. Ellett (In re Ellett),* 254 F.3d 1135, 1139 (9th Cir.2001) ("Accordingly, the threshold question in this case is whether a State that does not consent to a bankruptcy court's jurisdiction by filing a proof of claim *or otherwise participating in the bankruptcy proceeding* is nonetheless bound by the bankruptcy court's § 524 discharge injunction." [Emphasis added.] ).

In a later decision, S*chulman v. California (In re Lazar),* 237 F.3d 967 (9th Cir. 2001), the Ninth Circuit elaborated on the scope of such a waiver of immunity. The matters in issue in *Lazar* related to a fund (the "Fund") established under the Barry Keane Underground Storage Cleanup Trust Fund Act, enacted by the California state legislature to address the problem of leaking underground fuel storage tanks. The Fund is funded by fees imposed on underground storage tank owners for each gallon of gasoline or other petroleum prod-

ucts stored in a permitted underground storage tank. *Id.* at 971–72.

In *Lazar,* the California State Controller and the California State Board of Equalization (the "Board of Equalization") had submitted proofs of claim for unpaid taxes, including taxes payable into the Fund, in the bankruptcy case of Gary and Divine Grace Lazar. *Id.* at 972. After exhausting administrative remedies at the state level, the Lazars' chapter 7 trustee (the "Trustee") filed a Petition for Peremptory Writ of Administrative Mandamus or Other Appropriate Writ (the "Mandamus Action") against the California State Water Resources Control Board (the "State Board") in the California state courts, which later was removed to the bankruptcy court for the Central District of California. *Id.* In the Mandamus Action, the Trustee sought an order compelling the State Board to reinstate claims of the Lazars' bankruptcy estate against the Fund so that the estate could use the Fund to demonstrate financial responsibility for operation of underground storage tanks consistent with the requirements of state and federal law. *Id.* In addition, the Trustee sought "actual damages" in excess of $2.2 million, reasonable attorney's fees and such "further relief as appears appropriate under the circumstances." *Id.* In response, the State Board moved for remand, or in the alternative, abstention and remand, based among other things on the bankruptcy court's alleged lack of jurisdiction due to the State Board's sovereign immunity under the Eleventh Amendment. *Id.* at 972–73.

The Ninth Circuit upheld the bankruptcy court's decision, previously affirmed by the district court on appeal, that the state of California had waived it Eleventh Amendment immunity with respect to the Mandamus Act on by filing its proofs of claim. *Id.* at 973, 980, 981. The Ninth

Circuit based its holding on its conclusion that the claims asserted by the Trustee against the State Board in the Mandamus Action arose out of the same series of transactions and/or occurrences that resulted in the California state agencies filing their proofs of claim.

> [W]e hold today that when a state or an "arm of the state" files a proof of claim in a bankruptcy proceeding, the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim.

*Id.* at 978.

In determining whether the Trustee's claims against the State Board arose out of the same transactions or occurrences that generated the state's proofs of claim, the Ninth Circuit applied the "logical relationship" test of Fed.R.Civ.P. 13(a).

> A logical relationship exists when the [claim] arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the [opposing party].

*United States v. Bulson (In re Bulson),* 117 B.R. 537, 541 (9th Cir. BAP 1990), *aff'd by memorandum,* 974 F.2d 1341 (9th Cir.1992).

In *Lazar,* the Ninth Circuit focused on the facts that approximately $13 million of the taxes/fees claimed by the Board of Equalization in its proof(s) of claim represented amounts claimed for the Fund, and the Trustee asserted claims in the Mandamus Action for reimbursement of approximately $4 million from the Fund. Because both the Board of Equalization's claims against the Lazars' bankrupt estate asserted through its proof(s) of claim and the Trustee's claims in behalf of the estate in the Mandamus Action revolved around the Fund, the Ninth Circuit determined that ·they were logically related and arose out of the same transactions or occurrences. Accordingly, because the Board of Equalization had filed a proof(s) of claim in the Lazars' bankruptcy case that arose out of the same transactions or occurrences as the Trustee's claims against the State Board in the Mandamus Action, the Ninth Circuit held that the state of California had waived its sovereign immunity for purposes of the Mandamus Action.

■■ The circumstances of this case fit within the *Lazar* analysis. The Adversary Proceeding and the prior proceedings in the WCI Cable, Inc. main case involving the Alaska Railroad Corporation are all about money—specifically, whether the WCI Group is required to pay the specified fees or rent under the Permits to the Alaska Railroad Corporation. As opposed to the general appearance of the state of California discussed in the *Lazar* decision, 237 F.3d at 980 n. 14, when the Alaska Railroad Corporation filed its Objection to the Motions, it invoked the jurisdiction of this court specifically to require the WCI Group to make "the payments due and owing" under the Permits both as a condition to granting the Motion to Extend and as required to comply with the provisions of Section 365(d)(3) of the Bankruptcy Code. It further invoked the jurisdiction of this court to require the WCI Group to make the scheduled payments under the Permits in order to provide "adequate protection" to the Alaska Railroad Corporation. In addition, the Alaska Railroad Corporation characterized unpaid rent or fees under the Permits as "costs of administration," entitled to preferred administrative expense treatment upon confirmation of any plan of reorganization or liquidation in the WCI Group chapter 11 cases. *See, e.g., 995 Fifth Ave. Assoc. v. New York*

*State Dep't of Taxation and Fin. (In re 995 Fifth Ave. Assoc., L.P.),* 963 F.2d 503, 506–07, 509 (2d Cir.1992). The Alaska Railroad Corporation unequivocally determined to seek the assistance of this court through the Objection, as reflected in the Declaration of William Hupprich, the Alaska Railroad Corporation's in-house Associate General Counsel, filed in support of the Objection.

The result of the Alaska Railroad Corporation's filing its Objection was exactly what one would expect in a chapter 11 case: The WCI Group agreed to make a substantial interim payment ($150,220) to the Alaska Railroad Corporation, the Alaska Railroad Corporation withdrew its Objection to the particular limited relief requested in the Motions, and the parties agreed to preserve their more general claims and defenses assertion in an appropriately framed adversary proceeding.

Having seen the Complaint, it is not appropriate now for the Alaska Railroad Corporation to raise the defense of sovereign immunity against having payment issues under the Permits resolved in the Adversary Proceeding that it apparently was eager to have this court address in the context of its Objection. The Alaska Railroad Corporation must "abide by the consequences" of its invocation of this court's jurisdiction and may not evade this court's jurisdiction just because a case has moved in a direction that it does not like, or it perceives that another forum might be more congenial. *See Gardner v. New Jersey,* 329 U.S. at 573, 67 S.Ct. 467; *Confederated Tribes of the Colville Reservation Tribal Credit v. White,* 139 F.3d at 1272; *United States v. State of Oregon,* 657 F.2d 1009, 1014 (9th Cir.1981).

I find that the claims stated in the Complaint in the Adversary Proceeding arise with respect to the same transactions, i.e. the payment obligations of the WCI Group

under the Permits, concerning which the Alaska Railroad Corporation invoked this court's jurisdiction in the Objection. Accordingly, I find that the Alaska Railroad Corporation has waived the defense of sovereign immunity with respect to the Adversary Proceeding. The court will enter a separate order denying the Alaska Railroad Corporation's Motion to Dismiss.