In re Wayne D. MOZINGO, Debra A. Mozingo a/k/a Debra Adams, Debtors.

Bankruptcy No. 97–35728DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

July 15, 1998.

---

Theresa L. Giannone, Pachtman Law Offices, Folsom, PA, for Debtors.

Jayne C. Shinko, Asst. Counsel, Department of Labor and Industry, Harrisburg, PA, for BUCBA.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A.  INTRODUCTION*

The instant contested matter is a motion to avoid a lien ("the Motion") placed by the Bureau of Unemployment Compensation Benefits and Allowances ("BUCBA"), an agency of the Commonwealth of Pennsylvania's Department of Labor and Industry, which allegedly secures the property of a co-debtor due to the overpayment of unemployment compensation benefits to that debtor. The issues presented herein are (1) whether sovereign immunity arising from the Eleventh Amendment of the United States Constitution deprives this court of jurisdiction to decide the Motion; (2) assuming that we have jurisdiction to decide the issue, whether any such lien was properly perfected as to any property of the co-debtor; and (3) further assuming that a valid lien exists, wheth-er BUCBA has an unavoidable statutory or an avoidable judicial lien against the co-debtor's property.

Finding that we have jurisdiction to make at least the following determination, we hold that BUCBA's lien, although apparently statutory and therefore unavoidable under 11 U.S.C. § 522(f)(1), was not in fact perfected against any property of the co-debtor and hence is ineffectual. Therefore, although we must deny the Motion, we also hold that BUCBA's claim must be reclassified as a general unsecured claim.

*B.  PROCEDURAL AND FACTUAL HISTORY*

On February 15, 1995, BUCBA determined that DEBRA A. MOZINGO ("the Wife") had failed to report wages earned between April 2, 1994, and August 13, 1994, while she had simultaneously received monthly unemployment compensation benefits from BUCBA. After making a further determination that the Wife's receipt of such overpayments constituted a "fault overpayment," the Wife was notified by BUCBA that she had to repay the amount owed, $5,994.60, with interest.

Thereafter, on July 6, 1995, the Wife entered into an Agreement of Restitution with BUCBA to repay the overpaid sum in monthly installments of $100, with the first installment due August 1, 1995. However, the Wife made no payments and five months later, on January 10, 1996, BUCBA filed a lien against her, pursuant to 43 Pa.C.S. § 874(a), incorporating 43 Pa.C.S. § 788.1, in the Delaware County Court of Common Pleas ("the C.C.P.") in the amount of $6,256.50, which included accrued interest, plus additional interest.

The Wife and her husband, WAYNE D. MOZINGO (collectively "the Debtors"), filed the underlying joint Chapter 13 petition and plan on December 31, 1997. According to the Debtors' schedules, they owned no real property, and their personal property included only checking and savings accounts totalling $300, various items of household goods valued at $2,000, a jointly-owned 1990 Buick Skylark, and a 1993 Ford Tempo owned sole-

ly by the Wife. BUCBA was listed among their unsecured nonpriority creditors in the amount of $7,550.

On January 21, 1998, BUCBA filed a proof of claim, asserting a claim secured by a statutory lien against the Wife in the amount of $7,254.93. The Debtors filed the Motion to avoid this lien, pursuant to 11 U.S.C. § 522(f)(1), on April 15, 1998. A hearing on the Motion was scheduled on May 14, 1998, and continued until June 16, 1998. The Debtors' confirmation hearing was initially scheduled on May 19, 1998, but was also continued to June 16, 1998, on which date a motion of the Standing Chapter 13 Trustee to dismiss this case for insufficient payments and plan infeasibility was also listed.

Prior to the hearing on the Motion, the disposition of which is apparently critical to the feasibility question, BUCBA filed a Response setting forth several defenses to the Motion and a brief in opposition to the Motion. The Debtors also filed a pre-hearing brief in support of the Motion. After the hearing, we accorded the parties an opportunity to submit supplemental briefs by July 2, 1998. We specifically requested the parties to address, in their supplemental briefs, whether any valid lien of BUCBA existed, citing to our recent decision in *In re Flowers*, 1998 WL 191425 (Bankr.E.D.Pa. April 17, 1998), which held that the debtor could not succeed in a motion under 11 U.S.C. § 522(f)(1) because the respondent did not have a valid lien against the debtor, but that a declaration that the respondent's purported lien was in fact invalid should also issue.

## C. DISCUSSION

1. *This Court Has Jurisdiction to Determine the Proper Classification of BUCBA's Claim, Irrespective of the Dictates of the Eleventh Amendment.*

■ BUCBA argues that its sovereign immunity, arising under the Eleventh Amendment, *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72–73 & n. 16, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); and *In re Sacred Heart Hospital of Norristown*, 133 F.3d 237, 241–45 (3d Cir.1998), deprive this court of jurisdiction to decide the Motion.

We find BUCBA's reasoning difficult to follow. BUCBA apparently concedes that it has consented that this court may determine the Debtors' monetary liability to it by its filing a proof of claim in this case. *See Gardner v. New Jersey*, 329 U.S. 565, 570–81, 67 S.Ct. 467, 91 L.Ed. 504 (1947). However, it argues that any exercise of this court's power to avoid its lien would be an invasion of a "property interest" of the state which extends beyond the relief to which it has consented.

BUCBA has cited no case which recognizes the distinction which it seeks to impose upon us. We note that, in *Gardner*, the Court held that, in light of the state's filing of a claim, the validity of a lien at issue in that case was a proper question for the bankruptcy court to decide. *Id.* at 579–81, 67 S.Ct. 467. Contrary to BUCBA's position, we note that a post-*Seminole* decision arising in this Circuit expressly rejected the argument that the Eleventh Amendment prohibits a bankruptcy court from avoiding a state's judicial lien under 11 U.S.C. § 522(f)(1). *In re Fennelly*, 212 B.R. 61, 63–64 (D.N.J.1997).

We recognize that *Sacred Heart* declared the very broad abrogation of state sovereign immunity set forth in 11 U.S.C. § 106(a) of the Bankruptcy Code unconstitutional on Eleventh Amendment grounds, as interpreted by *Sacred Heart*, 133 F.3d at 241–45. *Accord, In re Estate of Fernandez*, 123 F.3d 241, 243–46, *modified on rehearing*, 130 F.3d 1138 (5th Cir.1997); and *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140, 1144–47 (4th Cir.1997), *cert. denied sub nom. Schlossberg v. Maryland Comptroller of Treasury*, —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). However, 11 U.S.C. § 106(b) thusly provides a much narrower set of circumstances in which a state's sovereign immunity is waived, as opposed to the broad abrogation of such rights in § 106(a):

> a governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

However, except for the *Creative Gold-smiths* court, 119 F.3d at 1147, the other Courts of Appeals addressing the issue, including the *Sacred Heart* court in this Circuit, have refused to declare 11 U.S.C. § 106(b) unconstitutional. One Circuit has expressly upheld the constitutionality of § 106(b). *In re Straight,* 143 F.3d 1387, 1391–92 (10th Cir.1998). Several others have implicitly upheld it by invocation of *Gardner, supra. See Texas v. Walker,* 142 F.3d 813, 820–23 (5th Cir.1998); *In re Platter,* 140 F.3d 676, 678–80 (7th Cir.1998); and *In re White,* 139 F.3d 1268, 1271 (9th Cir.1998). *See also In re Schmitt,* 220 B.R. 68 (Bankr.W.D.Mo. 1998) (Eleventh Amendment does not bar a dischargeability determination against state officials under the doctrine of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); and *In re Rose,* 215 B.R. 755 (Bankr.W.D.Mo.1997) (Eleventh Amendment oes not bar a determination of dischargeability against a state agency on the basis of § 106(b) and *Gardner* despite an earlier decision of that same court upholding Eleventh Amendment immunity on other grounds in *In re Rose,* 214 B.R. 372 (Bankr.W.D.Mo. 1997)). *See also In re Neary,* 220 B.R. 864 (Bankr.E.D.Pa.1998) (RASLAVICH, J.) (Eleventh Amendment bars dischargeability action against the state itself, although an action against state officials under *Young, supra,* is not ruled out).

In order to determine that we "have jurisdiction" to rule on the Motion, we need not go even so far as to hold that § 106(b) remains constitutional despite the presence of the Eleventh Amendment, as interpreted by *Seminole.* We need not even go so far as to hold that *Gardner* survives *Seminole,* although there is no reason whatsoever to conclude that it does not. We need not even determine that, were the lien at issue a validly perfected judicial lien, we could avoid it under 11 U.S.C. § 522(f)(1), as the court did in *Fennelly, supra,* in light of our disposition at pages 479–80 *infra.* Rather, we need only find, and do so find, that we are empowered to rule on the validity of all aspects of the proof of claim, which BUCBA has put before us, *i.e.,* its secured status as well as its amount. We have little question that we

have jurisdiction to do this and so proceed to do so.

2. Although the Lien at Issue Appears to be Statutory in Nature, Since the Wife Owns No Realty and BUCBA Did Not Execute on Any of Her Personalty, BUCBA Does Not Have a Validly Perfected Lien Against Any Property Of the Debtors.

■ BUCBA claims to have not merely a lien against all property owned by the Wife, but an unavoidable statutory lien against such property pursuant to 43 Pa.C.S. § 788.1 and § 874(a). The Debtors acknowledge that BUCBA's lien is based upon these Pennsylvania statutes, but argue that BUCBA has an avoidable judicial lien against them. The statutes at issue provide as follows in pertinent part:

43 Pa.C.S. § 874(a)

(a) Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest. . . . Such sum shall be collectible (1) in the manner provided in section [788.1]. . . of this act, for the collection of past due contributions, or (2) by deduction from any future compensation payable to the claimant under this act. . .

43 Pa.C.S. § 788.1

(a) All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, including after-acquired property of the employer liable therefor and shall attach thereto from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. . .

(b) the department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record and indexed as

judgments are not indexed, certified copies of all liens imposed hereunder, upon which record it shall be lawful for writs of execution to be directly issued without the issuance and prosecution to judgment of writs of scire facias...

Thus, the pertinent Pennsylvania law extends the remedy provided against a delinquent employer in § 788.1 to an employee who receives a "fault overpayment" pursuant to § 874(a), and thus provides BUCBA with the option of either requiring a delinquent recipient to repay the overpaid contributions or placing a lien against the delinquent recipient's property.

■ The classification of BUCBA's lien is an issue to which the parties address a significant portion of their submissions. The Bankruptcy Code distinguishes between three types of liens: statutory, judicial, and consensual. *See Graffen v. Philadelphia*, 984 F.2d 91, 96 (3d Cir.1992); *Fennelly, supra*, 212 B.R. at 65; and *In re Aikens*, 87 B.R. 350, 353 (Bankr.E.D.Pa.1988). Since BUCBA's lien was not created consensually, the only dispute is whether it is a statutory or judicial lien. A statutory lien is defined as a

lien arising solely by force of a statute on specified circumstances or conditions, ... but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute. 11 U.S.C. § 101(53).

A judicial lien, meanwhile, is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The important distinctions between these two types of liens are that statutory liens arise "automatically" and are avoidable only under the limited terms of 11 U.S.C. § 545(2), while judicial liens arise from court proceedings and are rather easily avoided pursuant to 11 U.S.C. § 522(f)(1).

In arguing that BUCBA's lien is judicial, and thus avoidable under § 522(f)(1), the Debtors rely on the interpretation of 43 Pa. C.S. §§ 788.1 and 874 set forth in *In re Barbe*, 24 B.R. 739 (Bankr.M.D.Pa.1982). *Barbe* holds that BUCBA's lien against a debtor's home under the Pennsylvania statutes at issue here was a judicial lien because its determination was subject to a prior administrative process. *Id.* at 740.

However, *Barbe* was succeeded by the controlling decision in *Graffen, supra*, which holds that a governmental entity's use of a judicial process does not necessarily create a judicial lien. 984 F.2d at 96–97. The *Graffen* Court distinguishes its earlier decision holding that a welfare lien is an avoidable judicial lien in *Gardner v. Pennsylvania*, 685 F.2d 106 (3d Cir.), *cert. denied*, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), because that type of lien arises only as a result of the judicial process. 984 F.2d at 97. It also references the decision in *Barbe, supra*, that the lien at issue is judicial because an administrative adjudication preceded the entry of the lien. *Id.* However, the *Graffen* court, somewhat ominously for the Debtor's position, states that the *Barbe* precedent "is not binding on us, [and] is not helpful as there was no such proceeding in this case." *Id.*

There was very little in the way of an administrative adjudication in the instant fact setting. We believe that there is little, if anything, to distinguish the water and sewer lien procedure in *Graffen*, which we agreed in *Aikens, supra*, rendered that lien statutory, from the instant procedure. It appears to us that the *Graffen* Court disapproved the *Barbe* result.

Fortunately, the resolution of this issue is unnecessary to decide the Motion, because, contrary to the arguments of BUCBA, controlling precedent establishes that the instant lien has never been perfected and therefore is not secured by any of the Debtors' property.

The Pennsylvania Supreme Court, in *Commonwealth v. Lombardo*, 356 Pa. 597, 604, 52 A.2d 657, 660 (1947), observes that the provisions of the predecessor of 43 Pa.C.S. § 788.1(a) to the effect that the lien at issue attaches from the date of its entry are inconsistent with the provisions of the predecessor of 43 Pa.C.S. § 788.1(b) that a writ of execution is necessary to perfect a lien. The *Lombardo* court then resolves the conflict by

holding that the latter provisions, now part of § 788.1(b), must prevail. *Id.* It then further held that a motor vehicle owned by the recipient of a fault overpayment is not subject to the lien. 356 Pa. at 607–09, 52 A.2d at 661–62.

Moreover, the conclusion of the *Lombardo* court is reiterated by the Court of Appeals in *Ersa, Inc. v. Dudley,* 234 F.2d 178, 181–82 (3d Cir.1956), which is clearly binding upon this court. As the *Ersa* court puts it, "The filing of a lien is only 'a *caveat* of a more perfect lien to come.' *New York v. Maclay,* 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933).... It is not actually perfected as a choate lien on personal property until the writ of fieri facias has been issued and delivered to the sheriff for execution." *See also First Nat'l Bank of Plymouth v. Bo–Jack Mfg. Corp.,* 13 D. & C.2d 518, 521–22 (Luzerne Co. C.P.1958).

██ Neither of the Debtors owns any real property. Therefore, the only property that they own which could be subject to any lien that BUCBA has against the Wife must be against personal property alone. However, "a judgment does not, prior to attempted execution upon it, effect a lien on any personal property of a judgment debtor, whether owned by the debtor by the entireties or individually." *Flowers, supra,* 1998 WL 191425, at *1. The *Lombardo* and *Ersa* cases establish that the lien at issue works exactly like the normal Pennsylvania process for execution on personalty. Therefore, a valid lien against the Wife's personal property would arise only upon execution which satisfies the perfection requirement. A mere recordation of the lien in the C.C.P. is not sufficient to perfect such a lien.

BUCBA argues in its post-hearing submission that its lien attached, by operation of law, to all property owned by the Wife on the date of the recording of the lien, and on property acquired by her thereafter. However, the only authority for this statement is the language of § 788.1(a). No reference is made to *Lombardo* or *Ersa,* which qualifies the language of § 788.1(a) by rendering it subordinate to the conflicting language of § 788.1(b). Instructively, BUCBA concedes, at page 7 of its brief, that " '[p]erfection' is

required for a statutory lien to be unavoidable." This accurate statement of the law is followed by an inaccurate statement that the lien at issue "has been perfected." *Id.*

Since there is no valid lien against the Debtors' property at issue, there is no lien against which 11 U.S.C. § 522(f)(1) or any other Code section need or can be utilized, and the Motion must be denied. *See Flowers, supra,* at *2. However, as in *Flowers* and believing that no element of immunity precludes us from so doing, we will include in our attached order our legal conclusion that, since there is no perfected, choate, and hence valid lien of BUCBA to avoid, BUCBA's claim is properly classified as a general unsecured claim.

### D. CONCLUSION

An order consistent with the conclusions expressed herein will be entered. We will also reschedule the Debtors' confirmation hearing and the Trustee's motion to dismiss this case on July 21, 1998, in light of this decision.