**In re Debra A. MOZINGO,**
**Debtor Appellee,**

v.

**Commonwealth of PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY BUREAU OF UNEMPLOYMENT BENEFITS AND ALLOWANCES (BUCBA), Appellant.**

No. CIV. A. 98–4337.

United States District Court,
E.D. Pennsylvania,
Philadelphia Division.

April 19, 1999.

Theresa L. Giannone, Pachtman Law Offices, Folsom, PA, for Debtors.

Jayne C. Shinko, Asst. Counsel, Department of Labor and Industry, Harrisburg, PA, for BUCBA.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

### *MEMORANDUM*

PADOVA, District Judge.

Appellant, the Commonwealth of Pennsylvania Department of Labor and Industry Bureau of Unemployment Benefits and Allowances ("BUCBA"), brings this action appealing the decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania which declared BUCBA's lien on the property of Debtor/Appellee, Debra Mozingo, invalid and classified BUCBA's claim as a general unsecured claim. For the reasons discussed below, the Bankruptcy Court's decision will be reversed, its order vacated, and the case will be remanded for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are not in dispute.[1] On February 15, 1995, BUCBA determined that Debtor/Appellee Debra A. Mozingo ("Mrs. Mozingo") had failed to report wages earned between April 2, 1994, and August 13, 1994, during which time Mrs. Mozingo had simultaneously received monthly unemployment compensation benefits from BUCBA. BUCBA determined that the monthly unemployment compensation benefits paid during that period constituted a "fault overpayment" totaling $5,920.00 and notified Mrs. Mozingo that she had to repay the total amount together with interest.

On July 6, 1995, Mrs. Mozingo entered into an agreement of restitution with BUCBA to repay the overpaid sum in monthly installments of $100.00, the first installment to be paid August 1, 1995. Mrs. Mozingo, however, made no such payments and on January 29, 1996, BUCBA filed a lien against her property pursuant to 43 PA. Stat. Ann. § 874(a)(West 1991), incorporating 43 PA. Stat. Ann. § 788.1 (West 1991), in the Delaware County Court of Common Pleas in the amount of $6,256.50, which amount included accrued interest.

Mr. and Mrs. Mozingo, Appellees, filed a joint Chapter 13 bankruptcy petition and plan on December 31, 1997. According to the Appellees' schedules, they owned no real property, and their personal property included only checking and savings accounts totaling $300.00, various items of household goods valued at $2,000.00, a jointly-owned 1990 Buick Skylark, and a 1993 Ford Tempo owned solely by Mrs. Mozingo. BUCBA was listed among their

---

1. This Court's recitation of the facts are substantially adopted from the Bankruptcy Court opinion.

unsecured nonpriority creditors in the amount of $7,550.00.

On January 21, 1998, BUCBA filed a proof of claim, asserting a claim secured by a statutory lien against Mrs. Mozingo's property in the amount of $7,254.93. On April 15, 1998, the Appellees, asserting that BUCBA's lien was judicial, filed a Motion to avoid the lien pursuant to 11 U.S.C.A. § 522(f)(1)(A) (West 1993 & Supp.1999), which provides a method for a debtor to avoid judicial liens that would impair an exception to which the debtor would otherwise be entitled. After a hearing on the Motion and substantial briefing by the parties, the Bankruptcy Court, without deciding whether the lien was judicial or statutory, held that BUCBA's lien was not perfected and was therefore not valid against any property of the Debtor/Appellee. *In re Mozingo*, 222 B.R. 475, 478 (Bankr.E.D.Pa.1998). The Bankruptcy Court therefore issued an order declaring BUCBA's lien invalid and re-classifying its claim as a general unsecured claim against the Appellee's property.[2] *Id.* at 480.

## II. LEGAL STANDARD

■ "[I]n bankruptcy cases, the district court sits as an appellate court." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir.1995). "As a proceeding tried initially before the Bankruptcy Court for the Eastern District of Pennsylvania, the standard of review for the district court is governed by [Federal Bankruptcy Rule of Procedure] 8013." *Id.* Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.Bankr.R.P. 8013.

■ The district court applies "a clearly erroneous standard to findings of fact ... [and] a *de novo* standard of review to questions of law." *Berkery v. Comm'r, Internal Revenue Serv.*, 192 B.R. 835, 837 (E.D.Pa.1996) (citing, *inter alia, Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981)), aff'd, 111 F.3d 125, 1997 WL 169267 (1997). *De novo* review requires the district court to make its own legal conclusions, "without deferential regard to those made by the bankruptcy court." *Fleet Consumer Discount Co. v. Graves (In re Graves)*, 156 B.R. 949, 954 (E.D.Pa.1993), aff'd, 33 F.3d 242 (3d Cir. 1994). When the parties to an appeal have submitted their case on a stipulated record of facts, a district court makes its own independent determination regarding the disposition of the legal issues presented by the case. *Citicorp Mortgage, Inc. v. Hirsch (In re Hirsch)*, 166 B.R. 248, 251 (E.D.Pa.1994).[3]

## III. DISCUSSION

On appeal, BUCBA argues that: (1) it has sovereign immunity from actions to avoid or invalidate its liens; (2) the filing of a proof of claim does not constitute a waiver of immunity; (3) its property interest is a statutory lien which cannot be avoided; (4) the Bankruptcy Court had no

---

**2.** In support of its action, the Bankruptcy Court cited its recent decision in *In re Flowers*, 1998 WL 191425 (Bankr.E.D.Pa. April 17, 1998), which not only held that a debtor could not succeed in a motion under 11 U.S.C.A. § 522(f)(1) where the respondent did not have a valid lien against the debtor, but further held that the court should issue a declaration that respondent's purported lien was in fact invalid. *Id.*

**3.** While the parties in the instant proceeding have not submitted stipulated facts, the facts here are not in dispute as noted earlier. The issue to be decided by this Court is a legal issue only, namely one of statutory interpretation, and therefore the Court's review of the Bankruptcy Court decision is *de novo*.

power to enter declaratory relief against state absent its consent; and, (5) the Bankruptcy Court had no legal or factual basis to invalidate its lien.

■ The Court believes that the proper classification of the lien at issue, i.e., as either judicial or statutory, will resolve all of the issues raised on appeal and will moot the Eleventh Amendment sovereign immunity claims raised by BUCBA. "Federal courts must consider nonconstitutional grounds for decision" before reaching constitutional issues. *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). Therefore, the Court begins its analysis with a determination of the nature of the lien at issue.

The Bankruptcy Code recognizes three types of liens: judicial, statutory, and consensual. *Graffen v. City of Philadelphia,* 984 F.2d 91, 96 (3d Cir.1992). A "judicial lien" is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C.A. § 101(36) (West 1993). The Bankruptcy Code, 11 U.S.C.A. § 101(53), defines a "statutory lien" as follows:

> [a] lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is made fully effective by statute.

11 U.S.C.A. § 101(53) (West 1993). Consensual liens are not at issue here.

■ A debtor involved in a Chapter 13 bankruptcy may avoid the fixing of a lien on its interest in property to the extent that the lien impairs an exemption to which the debtor would have been entitled, but the lien must be judicial and not statutory in nature. 11 U.S.C.A. § 522(f)(1)(A); *Commonwealth v. Zukowfsky (In re Zukowfsky),* Nos. 94–22058T, CIV. A. 95–2817, 1995 WL 695108, at *2 (E.D.Pa. Nov. 22, 1995).[4]

■ The lien at issue arises from the interplay of two sections of the Pennsylvania Unemployment Compensation Law, 43 PA. Stat. Ann. § 874(a) ("§ 874(a)") and 43 PA. Stat. Ann. § 788.1 ("§ 788.1"), which it incorporates. § 874(a) makes the collection procedure provisions of § 788.1, which are written in terms of employers, applicable to individuals who receive unemployment compensation to which they were not entitled. The statute provides in relevant part:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue ... Such sum shall be collectable (1) in the manner provided in section 308.1 [ (43 PA. Stat. Ann. § 788.1) ] or section 309 [ (43 PA. Stat. Ann. § 789) ] of this act ...

43 PA. Stat. Ann. § 874(a).

BUCBA's lien arises from § 788.1 which provides:

> (a) All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal,

---

**4.** In *In re Zukowfsky,* the facts of which are similar to those in the case at bar, Judge Reed discusses the legislative history behind 11 U.S.C.A. § 522(f)(1)(A), which enables a debtor to avoid judicial liens, and under which the Appellees moved in this case. Interestingly, while the history "evidences the legislature's intent to protect the overburdened debtor from the aggressive and sometimes harsh collection practices of private creditors ... the same intent is not apparent when it is a

government agency seeking payment for penalties imposed." *Id.* Judge Reed concludes that, "[t]he reasonable inference to be drawn is that the legislature did not contemplate a lien obtained by a government agency for penalties imposed when it created section 522(f)(1)(A). The section was simply not enacted with that situation in mind but rather was promulgated so that the debtor could avoid judgements obtained by private creditors who have beaten him to court." *Id.*

including such after-acquired property of the employer liable therefor and shall attach thereto from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. The lien imposed hereunder shall have priority from the date of such entry of record and shall be fully paid and satisfied out of the proceeds of any judicial sale of property subject thereto, before any other obligation, judgment, claim, lien or estate to which said property may subsequently become subject, except costs of the sale and the writ upon which the sale was made and real estate taxes and municipal claims against such property, but shall be subordinate to mortgages and other liens existing and duly recorded or entered of record prior to the recording of the tax lien. In the case of a judicial sale of property subject to a lien imposed hereunder, upon a lien or claim over which the lien imposed hereunder, upon a lien or claim over which the lien imposed hereunder has priority, as aforesaid, such sale shall discharge the lien imposed hereunder by the extent only, that the proceeds are applied to its payment and such lien shall continue in full force and effect as to the balance remaining unpaid.

(b) The department may at any time transmit to the prothonotary of the respective counties of the Commonwealth, to be by them entered of record and indexed as judgments are now indexed, certified copies of all liens imposed hereunder, upon which record it shall be lawful for writs of execution to be directly issued without the issuance and prosecution to judgment of writs of scire facias: Provided, That not less than ten (10) days before the issuance of any execution on the lien, notice of the filing and the effect of the lien shall be sent by registered or certified mail to the employer at his last known post office address. No prothonotary shall require as a condition precedent to the entry of

such liens the payment of the costs incident thereto.

43 PA. Stat. Ann. § 788.1(a) & (b).

BUCBA argues that its lien pursuant to § 788.1 is a valid and unavoidable statutory lien which attaches and becomes choate at the time of filing in the prothonotary's office. Appellees argued in the Bankruptcy Court that the lien at issue was a judicial lien avoidable under 11 U.S.C.A. § 522(f)(1)(A). In support of their argument that the lien was judicial, Appellees cited *In re Barbe*, 24 B.R. 739 (Bankr. M.D.Pa.1982), which held that BUCBA's lien against a debtor's home under the statutes at issue was a judicial lien because BUCBA's determination of the lien arose from an administrative process prior to its being recorded. *Id.*

As the Bankruptcy Court notes in its opinion, *Barbe* was succeeded by the controlling decision of the United States Court of Appeals for the Third Circuit ("Third Circuit") in *Graffen*, "which holds that a governmental entity's use of a judicial process does not necessarily create a judicial lien." *In re Mozingo*, 222 B.R. 475, 479. The Bankruptcy Court continues, "We believe that there is little, if anything, to distinguish the water and sewer lien procedure in *Graffen*, which ... rendered that lien statutory, from the instant procedure." *Id.* Finally, the Bankruptcy Court notes that in *Graffen* the Third Circuit explained that the *Barbe* precedent was "not binding on [it]" and appeared to have disapproved of its result. *Id.*

This Court agrees with the reasoning of the Bankruptcy Court concerning the nature of the lien and the effect of *Graffen* as it relates to lien at issue, i.e., that *Graffen*'s holding is controlling in the instant case. It is at this point in its analysis that the Bankruptcy Court errs. Although it states that the lien appears to be statutory in nature, the Bankruptcy Court, somewhat puzzlingly, does not decide the issue. Instead it relies on the "controlling precedent" of *Commonwealth v. Lombardo*, 356

Pa. 597, 52 A.2d 657 (1947) and *Ersa, Inc. v. Dudley*, 234 F.2d 178 (3d Cir.1956) which the Bankruptcy Court explains establishes that because BUCBA's lien was never perfected, it was not secured by any of the Debtor's property. *Id.*

This Court disagrees, and notes that, due to subsequent amendments to § 788.1, the *Lombardo* and *Ersa* decisions are no longer controlling precedent. The Court holds that BUCBA's lien is a valid statutory lien that attached to the Debtor's property, both real and personal, and became choate at the time of its recording.

In *Lombardo*, the Pennsylvania Supreme Court interpreted the 1945 version of § 788.1 of the Pennsylvania Unemployment Compensation Law. At the time of the *Lombardo* decision, section 788.1 was a single paragraph and contained the following contradictory language:

> All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interests and penalties is entered of record in the manner herein provided.... The Department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, certified copies of all liens for unpaid contributions, interest and penalties which may now exist or hereafter arise, upon which record it shall be lawful for writs of scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed.

*Lombardo*, 52 A.2d at 658 (quoting the 1945 text of § 788.1.) The court explained that, as per section 64 of the Statutory Construction Act, 46 PA. Stat. Ann. § 564 (repealed 1972, recodified as 1 PA. Cons. Stat. Ann. § 1934 (West 1995)), to the extent the last sentence of the section was in contradicted the first sentence, the final sentence must be controlling. The court

held, therefore, that the language of § 788.1 was not effective "to establish a lien against the personal property of an employer so as to prevent its transfer to a bona fide purchaser for value prior to the time that the writ of fieri facias, the first step in the execution process, is placed in the hands of the sheriff." *Id.* at 662.

The most troubling issue to the *Lombardo* court was the effect a contrary reading would have on a bona fide purchaser.

> [T]he real question here is whether an innocent purchaser of personal property ought to be bound by such notice as is afforded by the filing of the lien.

*Id.* at 661.

Since *Lombardo*, the statute has been amended several times. Most importantly, in the 1963–1964 amendments the legislature clearly addressed and resolved the issues involved in *Lombardo*. Significantly, the bona fide purchaser issue was addressed by the addition of § 788.1(d), which provides:

> Notwithstanding any other provisions of this section, the lien herein provided for shall have no effect upon any stock of goods, wares or merchandise regularly sold or leased in the ordinary course of business by the employer against whom said lien has been entered unless and until a writ of execution has been issued and levy made upon said stock of goods, wares and merchandise.

43 PA. Stat. Ann. § 788.1(d).

Noticeably absent from the amended language is the requirement for "writs of scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed." The 1963–1964 amendments removed the requirement for writs of scire facias and the language "as such writs are ordinarily employed", language upon which the *Lombardo* court relied in reaching its conclusion that BUCBA's lien upon the personal property of the employer was invalid as against a bona fide purchaser.

Finally, a post 1963–1964 amendment Pennsylvania Commonwealth Court decision noted:

> We are mindful of case law holding that a lien under Section 308.1 of the Unemployment Compensation Law does not attach until after a writ of fieri facias has been issued and delivered to the sheriff for execution, and that recording alone did not make the tax lien choate because there was something left to be done. Both *Lombardo* and *Ersa*, however, were pre 1963–64 cases and their holdings were based on an apparent conflict between the first and last sentence of Section 308.1(a) as it was then written. The first sentence said that the lien attached on recording and the last implied that it did not attach until issuance of a writ of fieri facias. The 1963–64 Amendments to Section 308.1(a) removed the conflict and the subsection has since clearly provided for the attachment of the lien on recording.

*Almi, Inc. v. Dick Corporation,* 31 Pa. Cmwlth. 26, 375 A.2d 1343, 1352 (1977) (internal citations omitted). This Court agrees with the conclusions of the *Almi* court, and believes that the Commonwealth Court's decision is indicative of the position which the Supreme Court of Pennsylvania would take if faced with interpreting the instant statute. Therefore, the Court holds that BUCBA's lien attached to the property of the Debtor/Appellee at the time of recording.

In light of the foregoing, the order of the Bankruptcy Court will be vacated and the case will be remanded for further consideration consistent with this opinion.

As noted, *supra*, because the Court has determined that BUCBA's lien is a statutory lien which cannot be avoided by the Debtor/Appellee, the Court need not reach the sovereign immunity issues raised by BUCBA.