### In re APPLIED THERMAL SYSTEMS, INC., Debtor.

### Patrick J. Malloy, III, Trustee, Plaintiff,

v.

### Zeeco, Inc., Defendant.

### Bankruptcy No. 00–02252–R.
### Adversary No. 03–0044–M.

United States Bankruptcy Court, N.D. Oklahoma.

June 30, 2003.

Patrick J. Malloy, III, Tulsa, OK, for Plaintiff.

Doneen D. Jones, Oklahoma City, OK, Todd A. Nelson, Roy C. Breedlove, Tulsa, OK, for Defendant.

## DETERMINATION OF NATURE OF ADVERSARY PROCEEDING AND REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO WITHDRAW REFERENCE

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes before the court pursuant to the Motion of Defendant, Zee-

co, Inc., for Determination that this is a Non–Core Proceeding, for Jury Trial, and to Withdraw the Reference and with Brief in Support (the "Motion"), filed April 22, 2003, by Zeeco, Inc., Defendant herein ("Defendant" or "Zeeco"). The Court has also reviewed the Response to the Motion filed May 7, 2003, by Patrick J. Malloy, III, Plaintiff herein ("Plaintiff" or "Malloy"), and the Reply Brief filed by the Defendant on May 19, 2003. In the Motion, Defendant requests that this Court find this adversary proceeding to be a "non-core" proceeding and recommend that reference of this adversary proceeding be withdrawn, and all further proceedings be held in the United States District Court for the Northern District of Oklahoma. For the reasons set forth below, this Court recommends that the Motion be denied.

### Jurisdiction

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334(b) (West 2003),[1] and venue is proper pursuant to 28 U.S.C.A. § 1409 (West 2003). Reference to the Court of this matter is proper pursuant to 28 U.S.C.A. § 157(a) (West 2003). As detailed more fully below, this is a core proceeding under 28 U.S.C.A. § 157(b)(2)(C) (West 2003). This report and recommendation is submitted pursuant to Rule B–6(6), District Court Rules for Bankruptcy Practice and Procedure.[2]

### Background

On June 19, 2000, Applied Thermal Systems, Inc. ("ATS") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. On July 7, 2000, Zeeco filed a proof of claim against the estate of ATS in the amount of $121,525.82 for "goods sold" and "services performed." The claim is based on ATS's failure to pay the balance allegedly due on a contract for the design and sale of duct burners, burner management control skids, and an augmenting air blower for the use of heat recovery steam generators to be installed at the Mustang Station Electric Generating Plant ("Mustang Station") located in Yoakum County, Texas.

On January 11, 2001, on motion of the Official Committee of Unsecured Creditors, ATS had its case converted to Chapter 7. Ten days later Malloy was appointed Trustee for the estate of ATS, a position which he still holds. Malloy filed his complaint against Zeeco (the "Complaint") on March 3, 2003. In the Complaint, Malloy alleges that Zeeco failed to properly construct the duct burners, burner management control skids, and the augmenting air blower for use at Mustang Station and that the equipment was not timely delivered under the contract entered into between Zeeco and ATS. According to the contract, Zeeco was to design the equipment to specific performance requirements and make it available for installation in late–1998 or early–1999. Malloy alleges that Zeeco failed to deliver the equipment until mid–2000 and that once delivered, the equipment failed to meet the performance requirements specified under the contract. Malloy alleges that these failures resulted in great expense to ATS. Malloy is seeking actual as well as incidental and consequential damages that have resulted from the alleged contract breaches of Zeeco. The contract described in the Complaint also forms the basis of Zeeco's claim in this bankruptcy case.

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2003).

2. *See In the Matter of Rules of Court, Miscellaneous No. M–128,* dated April 11, 1985.

## Discussion

■ Zeeco argues that reference of this adversary proceeding be withdrawn for "cause" under 28 U.S.C.A. § 157(d) (West 2003). As the moving party, Zeeco bears the burden of demonstrating cause for discretionary withdrawal.[3] Zeeco offers two bases for withdrawal of the reference: (i) that the contract claim being pursued by Malloy fails to constitute a core proceeding as that term is defined by 28 U.S.C.A. § 157 (West 2003) and (ii) that Zeeco is entitled to a jury trial of the matters raised in the Complaint under the Seventh Amendment to the United States Constitution. For the reasons given below, this Court finds no merit in either theory.

*The Complaint as a "Core" or "Non-core" Proceeding*

■ In the Motion, Zeeco asks this Court to determine whether the Complaint constitutes a "core" or "non-core" proceeding under 28 U.S.C.A. § 157 (West 2003). A portion of that statute requires that

The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this section or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on

the basis that its resolution may be affected by State law.[4]

Thus, given Zeeco's request, the Court must determine the nature of the Complaint. The decision requires a review of statutory and case law.

■ The jurisdictional framework of the bankruptcy courts is found in 28 U.S.C.A. § 157 (West 2003). Congress, in enacting that provision, created a jurisdictional scheme that distinguished between "core" and "non-core" proceedings. As those terms have been interpreted by courts, core proceedings implicate the peculiar rights stemming from bankruptcy and have no existence in another forum; non-core proceedings, on the other hand, are rights that do not depend on the bankruptcy for their existence and could proceed in another court.[5] The statutory definition of "core proceedings" includes "counterclaims by the estate against persons filing claims against the estate."[6] This definition reflects the principles established by the United States Supreme Court in *Katchen v. Landy*.[7] In *Katchen*, the Supreme Court specifically ruled that a bankruptcy court had the power to hear and decide state law counterclaims (including those seeking affirmative relief) against a creditor who had filed a proof of claim against the estate when the counterclaims arose out of the same transaction as the claim.[8]

3. *Official Committee of Unsecured Creditors v. Blease (In re Envisionet Computer Services, Inc.)*, 276 B.R. 7, 10 (D.Me.2002).

4. 28 U.S.C.A. § 157(b)(3) (West 2003).

5. *See Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 96 (5th Cir.1987); *see also Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517–18 (10th Cir.1990).

6. 28 U.S.C.A. § 157(b)(2)(C) (West 2003).

7. 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

8. *Id.* at 334–35, 86 S.Ct. 467. This interpretation of *Katchen* has been reinforced by subsequent opinions of the Supreme Court. *See, e.g., Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 852, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) ("Similarly, in *Katchen* ..., this Court upheld a bankruptcy referee's power to hear and decide state law counterclaims against a creditor who filed a claim in bankruptcy when those counterclaims arose out of the same transaction."). *Schor*, in many ways, runs parallel to *Katchen*. In that case, the Supreme Court held that the Commodity Futures Trading Commission (an Arti-

In the present case, the Complaint operates as a counterclaim to the proof of claim filed by Zeeco. The same contract which is the basis of Zeeco's claim is also the basis for the Complaint; thus, under the Federal Rules of Civil Procedure, the Complaint constitutes a compulsory counterclaim.[9] Under the rationale of *Katchen,* as under the plain meaning of § 157(b)(2)(C), the Complaint is a core proceeding.

Zeeco argues that, due to the state law nature of the claims raised therein, the Complaint constitutes a non-core proceeding and that entry of any judgment by this Court would violate the mandate of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*[10] which held that tra-

ditional common law actions, "related only peripherally to an adjudication of bankruptcy under federal law," must be heard by an Article III court absent consent of the litigants.[11] The argument is not well taken. There is one crucial difference between the case at bar and *Marathon* which Zeeco chooses to ignore. The adversary proceeding in *Marathon* was brought against an entity who had *not* filed a proof of claim against the estate of the debtor.

■ The United States Supreme Court has consistently held that a creditor who files a proof of claim against the estate of a bankrupt consents to the jurisdiction of the bankruptcy court for a full determination of the claims between the creditor and the estate.[12] Indeed, the Supreme Court

cle I agency) had the power to hear and determine state law counterclaims in the course of adjudicating claims under the Commodity Exchange Act.

9. *See* FED. R. CIV. P. 13 (West 2003), made applicable to bankruptcy proceeding under FED. R. BANKR. P. 7013 (West 2003) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]"); *see also Driver Music Co., Inc. v. Commercial Union Ins. Companies,* 94 F.3d 1428, 1435 (10th Cir.1996) ("[A] counterclaim is compulsory if (1) the issues of fact and law raised by the principal claim and the counterclaim are largely the same; (2) res judicata would bar a subsequent suit on the defendant's claim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and (4) there is a logical relationship between the claim and counterclaim." (citations and quotations omitted)).

10. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

11. *Id.* at 92, 102 S.Ct. 2858 (Burger, C.J., dissenting). Chief Justice Burger merely restated the position of then-Justice Rehnquist's concurrence in the case, which was joined by Justice O'Connor. The concurrence was narrower than the four Justice plurality opinion,

and as such, is the actual holding of *Marathon. See Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds[.]" (citations and quotations omitted)).

12. *See, e.g., Wiswall v. Campbell,* 93 U.S. 347, 351, 23 L.Ed. 923 (1876) ("Every person submitting himself to the jurisdiction of the bankrupt court in the progress of the cause, for the purpose of having his rights in the estate determined, makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding. A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences."); *Gardner v. New Jersey,* 329 U.S. 565, 573, 67 S.Ct. 467, 91 L.Ed. 504 (1947) ("It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." (citation omitted)); *Katchen, supra,* 382 U.S. at 334, 86 S.Ct. 467 ("[A] creditor who offers a proof of claim and demands its allowance is bound by what it judicially determined." (citation omitted)); *Langenkamp v. Culp,* 498 U.S. 42, 44,

has held that filing a proof of claim waives such entitlements as a creditor's Seventh Amendment right to a jury trial;[13] the right of a state or commonwealth to invoke sovereign immunity under the Eleventh Amendment;[14] and, of relevance here, the right to have private claims heard by an Article III court as established in *Katchen*.[15]

Nothing in *Marathon* diminishes the significance of *Katchen*. In *Marathon*, the Supreme Court recognized that bankruptcy courts, being constituted under Article I of the Constitution, could only hear and decide those issues that involved "public rights" emanating from federal bankruptcy power. Public rights in bankruptcy involve only those matters integral to "the restructuring of debtor-creditor relationships."[16] The Supreme Court has observed that allowance and disallowance of proofs of claims is a primary function of bankruptcy law.[17] The Supreme Court has also let it be known that counterclaims against a proof of claim are part of the claims allowance process.[18] As such, the adjudication of counterclaims in the context of claim allowance constitutes the adjudication of public rights by the bankruptcy court. Indeed, the process of claims allowance and disallowance is the paradigmatic example of public rights in bankruptcy. Both the claim and the Complaint are core proceedings.[19]

111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam) ("[B]y filing a claim against the bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power." (citations and quotations omitted)).

13. *See Langenkamp, supra,* 498 U.S. at 44, 111 S.Ct. 330; *Katchen, supra,* 382 U.S. at 336–37, 86 S.Ct. 467; *see also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58–59, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("[U]nder the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate[.]").

14. *Gardner, supra,* 329 U.S. 565, 67 S.Ct. 467; *see also College Savings Bank v. Fla. Prepaid Postsecondary Edu. Expense Bd.,* 527 U.S. 666, 681 n. 3, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) ("[*Gardner*] held that a bankruptcy court can entertain a trustee's objections to a claim filed by a State, stands for the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts.").

15. *Katchen, supra,* 382 U.S. at 334–35, 86 S.Ct. 467. In *Katchen*, the Supreme Court merely confirmed what many of the lower circuit courts had established in deciding the issue. *See generally* Comment, *Implied Consent to Summary Jurisdiction in Bankruptcy: the Forgotten Right to Jury Trial,* 114 U. Pa. L.Rev. 256, 257 n. 11 (1965) (citing cases), including the United States Court of Appeals for the Tenth Circuit. *See Inter-State Nat'l Bank of Kansas City v. Luther,* 221 F.2d 382 (10th Cir.1955) (en banc). This point was recognized without dispute by Justice White in his dissent of *Marathon. See Marathon, supra,* 458 U.S. at 99–100, 102 S.Ct. 2858 ("[I]f Marathon had filed a claim against the bankrupt in this case, the trustee could have filed and the bankruptcy judge could have adjudicated a counterclaim seeking the relief that is involved in these cases." (citing *Katchen*)).

16. *Marathon, supra,* 458 U.S. at 71–72, 102 S.Ct. 2858.

17. *Gardner, supra,* 329 U.S. at 573, 67 S.Ct. 467 (The process of claims allowance "is, indeed, of basic importance in the administration of a bankruptcy estate whether the objective be liquidation or reorganization. Without that sifting process, unmeritorious or excessive claims might dilute the participation of the legitimate claimants."); *Langenkamp, supra,* 498 U.S. at 44, 111 S.Ct. 330; *see also Granfinanciera, supra,* 492 U.S. at 57–59, 109 S.Ct. 2782.

18. *Langenkamp, supra,* 498 U.S. at 44, 111 S.Ct. 330 (citing *Katchen*).

19. Zeeco contends that a finding that this proceeding is non-core constitutes cause to

*Zeeco's Right to a Jury Trial*

■ Zeeco asks that the reference be withdrawn because it is entitled to a jury trial regarding the claims brought by Malloy in the Complaint. In this case, Zeeco filed a claim against ATS for monies which Zeeco claims to be owed. The United States Supreme Court has firmly established that once a creditor has filed a proof of claim, any right to a jury trial under the Seventh Amendment to the United States Constitution is waived.[20] Zeeco tries to avoid the consequences of this rule by distinguishing its case from those decided by the Supreme Court. This Court is not persuaded.

According to Zeeco, the Supreme Court's decisions in *Langenkamp, Granfinanciera,* and *Katchen* are not controlling because they are based on the avoidance statutes contained in the Bankruptcy Code (*i.e.,* public rights) and not state common law actions (*i.e.,* private rights) such as the one presented in the adversary proceeding in question. This distinction, however, cannot be maintained upon close examination of the cases. In *Granfinanciera,* the Supreme Court recognized that

> a bankruptcy trustee's right to recover a fraudulent conveyance ... seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions.... There can be little doubt that fraudulent conveyance actions by bankruptcy trustees-suits which, ... constitute no part of the proceedings in bankruptcy but concern controversies arising out of it-are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.[21]

The Supreme Court went on to state that if the defendant had filed a proof of claim, the trustee's fraudulent conveyance could have proceeded in bankruptcy court without a jury trial.[22] If the right to a jury trial on a fraudulent transfer claim could be waived by a creditor filing a proof of

---

withdraw the reference under 28 U.S.C.A. § 157(d) (West 2003). It is doubtful, however, that finding the proceeding to be non-core, without more (such as a right to a jury trial), would ever amount to cause to withdraw the reference from the bankruptcy court. *See Hatzel & Buehler, Inc. v. Central Hudson Gas & Electric Corp.,* 106 B.R. 367, 370 (D.Del. 1989). The real importance of the distinction between core and non-core proceedings is which court enters the final order in the case, not which court hears the case in the first instance. If a bankruptcy court determines that a proceeding is core in nature it is required to make findings of fact and conclusions of law and enter appropriate orders and judgments. *See* 28 U.S.C.A. § 157(b)(1) (West 2003). A determination that a proceeding is non-core requires that the bankruptcy court submit proposed findings of fact and conclusions of law to its district court subject to *de novo* review. *See* 28 U.S.C.A. § 157(c)(1) (West 2003). This jurisdictional scheme

makes it clear the Congress intended that bankruptcy proceedings be decided by bankruptcy courts and, at the same time, be insulated from constitutional attack. *See Hatzel & Buehler, supra,* 106 B.R. at 371; *see also Envisionet Computer Services, supra,* 276 B.R. at 9 ("Withdrawal from the bankruptcy court is an exception to the general rule that bankruptcy proceedings should be adjudicated in the bankruptcy court unless withdrawal is essential to preserve a higher interest." (citations, quotations and alterations omitted)).

**20.** *See Granfinanciera, supra,* 492 U.S. at 58–59, 109 S.Ct. 2782; *Langenkamp, supra,* 498 U.S. at 44, 111 S.Ct. 330; *Katchen, supra,* 382 U.S. at 336–37, 86 S.Ct. 467.

**21.** *Granfinanciera, supra,* 492 U.S. at 55–56, 109 S.Ct. 2782 (citations and quotations omitted).

**22.** *Id.* at 58–59, 109 S.Ct. 2782.

claim, it follows *a fortiori* that the right to a jury trial on a state law breach of contract claim can be waived in the same manner. There is no basis to conclude that the state law nature of the Complaint preserved Zeeco's right to a jury trial given that Zeeco had filed a proof of claim against the bankruptcy estate of ATS.

Zeeco argues that "[a] creditor should not be forced to make the decision to forego the filing of a proof of claim in order to preserve the right to a jury trial on state law breach of contract claims."[23] This is so, Zeeco believes, because once a debtor files for bankruptcy, there is no alternative forum in which to collect on the debt. As explained in a slightly different context (waiving sovereign immunity by filing a proof of claim), such an argument is without merit:

> As with any case of a knowing and intelligent waiver of rights, the state has the option (however unattractive that option may be) of determining whether the potential benefit from waiving its immunity will exceed the potential liability. If the state expects participation in the bankruptcy to yield a net gain, it may file a claim and waive its immunity with respect to certain counterclaims. Conversely, if the state expects its participation to yield a net loss, it may forego the bankruptcy proceedings and retain its immunity from suit. The unfairness the state may face in being forced into making this election is certainly no greater than that faced by any creditor who must decide whether to forego certain constitutional protections by submitting to the bankruptcy proceedings.[24]

Zeeco filed its proof of claim seeking relief from the bankruptcy court; namely, a pro-

rata share of the estate of ATS based on its state law contract claim. Now that Malloy claims that the estate is entitled to compensation from Zeeco arising out of the same transaction, Zeeco protests the authority of the bankruptcy court to hear the Trustee's claims. The position is untenable. If Zeeco was concerned about defending counterclaims in bankruptcy court, it should have foregone filing its proof of claim against the estate of ATS. Instead, Zeeco filed its proof of claim, effectively making a voluntary decision to waive its Seventh Amendment right to a jury trial.

### Conclusion

The Court concludes that the Complaint is a core proceeding under 28 U.S.C.A. § 157(b)(2)(C) (West 2003), and recommends that the Motion to Withdraw Reference filed by Zeeco, Inc., Defendant herein, be denied.

**23.** *Reply* at 1.

**24.** *Arecibo Community Health Care, Inc. v. Commonwealth of Puerto Rico,* 270 F.3d 17, 29 (1st Cir.2001) (holding that a state waived

its sovereign immunity to compulsory counterclaims based on state law when it filed a proof of claim against the estate).