In re: Stephen P. WALLACE, Debtor.

Ronald J. Saffa, individually and as successor co-trustee of the Lorice T. Wallace Revocable Trust, Plaintiff,

v.

Stephen P. Wallace, Defendant.

Bankruptcy No. 02–00073–M.
Adversary No. 04–1038–M.

United States Bankruptcy Court,
N.D. Oklahoma.

June 23, 2004.

James R. Hicks, Mark A. Craige, Morrel, West, Saffa, Craige & Hicks, Tulsa, OK, for Plaintiff or Petitioner.

Stephen P. Wallace, Tulsa, OK, pro se.

## ORDER DENYING WITHOUT PREJUDICE MOTION FOR CITATION OF CRIMINAL CONTEMPT

TERRENCE L. MICHAEL, Chief Judge.

THIS MATTER comes before the Court pursuant to the Motion for Citation of Criminal Contempt (the "Motion") filed June 9, 2004, by Ronald J. Saffa ("Saffa"), plaintiff herein. In the Motion, Saffa requests that the Court find Stephen P. Wallace ("Wallace"), defendant herein, in criminal contempt for violating a permanent injunction entered in the above referenced adversary proceeding. The Court finds that Saffa lacks standing to bring the Motion. In addition, significant questions exist regarding the jurisdiction of this Court to hear the Motion and/or conduct the jury proceedings demanded by the Motion. For these reasons, the Motion is denied without prejudice.

### Background

The Motion stems from the most recent battle in the internecine war between Saffa and Wallace. The battle has raged on in state and federal courts since at least 1999.[1] At the heart of the battle is the estate of Wallace's mother, which has been alleged to have a value of $30 million. In a nutshell, Wallace is unhappy with the administration of that estate, unhappy with the fact that he is not receiving money from the same, and blames Saffa and anyone else who crosses his path of litigation (including attorneys, political figures, and judicial officers) for his woes.

Wallace filed an original petition for relief under Chapter 11 of the United States Code Bankruptcy Code on September 13, 2001 (the "Bankruptcy Case"). On June 5, 2002, upon motion of the United States Trustee, the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code. Patrick J. Malloy III ("Malloy") is the duly appointed and acting Chapter 7 Trustee in the Bankruptcy Case.

Saffa filed claims in the Bankruptcy Case in the amount of $600,000.00 and

---

1. *See Case No. 02–0073–M, Stephen Paul Wallace, Debtor,* Docket No. 10, Answer to Question 4 of the Statement of Financial Affairs. For a more detailed history of the conflict between Wallace and Saffa, see *In re Wallace,* 288 B.R. 139 (Bankr.N.D.Okla.2002) (hereafter *"Wallace I"*).

$334,446.78 (the "Saffa Claims").[2] The former claim relates to damages allegedly caused by Wallace's malicious prosecution of Saffa. The latter claim relates to attorney's fees incurred by Saffa in the course of his dealings with Wallace.

Malloy and Saffa entered into negotiations for the compromise of the Saffa Claims which were successful. Under the terms of the settlement, the claim of $334,446.78 was to be subordinated to the claims of other unsecured creditors in the Bankruptcy Case.[3] In addition, the $600,000.00 claim was settled by allowing Saffa an unsecured claim against the estate in the amount of $50,000.00, and by Malloy providing Saffa with a full, complete and unconditional release of any alleged claims against Saffa which arose prior to the date the Bankruptcy Case was converted to Chapter 7.[4] These compromises were approved by the Court by orders entered on November 24 and 26, 2003.[5] The parties hoped that the release given to Saffa would put an end to Wallace's litigious escapades. They were mistaken.

On December 30, 2003, Wallace filed an action against Saffa in Illinois state court (the "Illinois Lawsuit"). The Illinois Lawsuit contained most if not all of the allegations previously made against Saffa and which Saffa believed had been released by Malloy. On February 2, 2004, Saffa filed this adversary proceeding seeking an injunction requiring Wallace to dismiss the Illinois Lawsuit and desist from filing similar actions in the future. Saffa argued that: (1) the claims being asserted in the Illinois Lawsuit were property of Wallace's bankruptcy estate; (2) the claims had been released by Malloy as part of their compromise; and (3) Wallace, by initiating the Illinois Lawsuit, was exercising control of estate property in violation of the automatic stay. On the same day, Saffa sought a preliminary injunction mandating immediate dismissal of the Illinois Lawsuit.

The Court held an evidentiary hearing on the request for preliminary injunction on February 18, 2004. Wallace, although given notice of the hearing, failed to appear. After making detailed findings of fact and conclusions of law on the record in open court, the Court granted Saffa's request. Pursuant to the preliminary injunction entered by the Court on February 25, 2004, Wallace was ordered to immediately dismiss the Illinois Lawsuit with prejudice and was enjoined from filing subsequent civil actions against Saffa stating claims that were either settled by Malloy or held by Wallace's bankruptcy estate.[6]

Wallace failed to answer Saffa's complaint. On April 11, 2004, the Court entered a default judgment against Wallace. Pursuant to the Court's ruling, Saffa was awarded fees and costs in bringing the adversary proceeding and the preliminary injunction was made permanent. A judgment memorializing the Court's mandate was entered on May 11, 2004.[7] Wallace eventually dismissed the Illinois Lawsuit without prejudice.

---

**2.** *See Case No. 02–0073–M,* Claim Nos. 20, 22, and 23.

**3.** *See Case No. 02–0073–M,* Docket No. 557.

**4.** *See Case No. 02–0073–M,* Docket No. 570. In this pleading, Malloy informed the Court that he had reviewed the claims made by Wallace against Saffa, and believed them to be "frivolous, vexatious and baseless."

**5.** *See Case No. 02–0073–M,* Docket Nos. 639 and 648.

**6.** *See Docket No. 18.*

**7.** *See Docket No. 37.*

The dismissal of the Illinois Lawsuit, rather than signifying an end to matter, was the precursor to a new beginning. On April 30, 2004, Wallace filed a civil action in the United States District Court for the District of Columbia (the "D.C. Lawsuit"). The D.C. Lawsuit lists approximately 110 individual and corporate defendants, including Saffa, and contains somewhat cryptic allegations that all defendants have committed unspecified acts of treason.[8] Saffa alleges that the D.C. Lawsuit is a direct violation of the Court's order enjoining Wallace from bringing civil actions against Saffa that relate to claims that are property of the estate or that have been settled by Malloy.

Saffa believes that Wallace's filing of the D.C. Lawsuit and his failure to dismiss the Illinois Lawsuit with prejudice should be severely penalized. Saffa no longer asks the Court to force Wallace to comply with its orders; instead, Saffa requests that Wallace be punished by imprisonment for a term of between 30 and 37 months. Saffa, recognizing that such criminal contempt proceedings likely fall outside the Court's jurisdiction, requests that the Court make a report and recommendation to the United States District Court for the Northern District of Oklahoma (the "District Court") for entry of judgment incarcerating Wallace. Under Saffa's proposal, the actual imposition of a criminal sentence would be performed by the District Court.

## Discussion

The Court is not unsympathetic to Saffa's plight. As it noted in *Wallace I*, Wallace has made repeated allegations of sensationally despicable conduct by Saffa and others, and has never presented a scintilla of evidence to support a single claim. Saffa has undertaken herculean efforts to bring Wallace's perpetual litigation machine to a halt. He has entered into settlements with Malloy, the legal holder of those claims. He has obtained orders enjoining Wallace from bringing further actions based upon those claims. Fees and expenses have been awarded against Wallace. All of these efforts have been to little or no avail. Now, borne out of desperation, frustration, and possibly exasperation, Saffa seeks to invoke the criminal power of the courts, and asks that Wallace be incarcerated for a period of not less than two and one half years. Saffa is no longer attempting to persuade Wallace to comply with orders of this Court; he is asking that Wallace be punished for his transgressions. As the old adage goes, "desperate times call for desperate measures."

 It is elementary that "[c]riminal contempt is a crime in the ordinary sense[.]"[9] An individual alleged to have committed criminal contempt is entitled to all the criminal procedural protections guaranteed by the United States Constitution, including the right to be presumed innocent, to be proven guilty beyond a reasonable doubt, to refuse to incriminate oneself, the right to counsel, and, in cases where imprisonment for more than six months is being sought, the right to a jury trial.[10] In addition, criminal contempt pro-

---

8. Included as defendants in the D.C. Lawsuit are Saffa, this judge, numerous other state and federal judges, Malloy, the Mayor of the City of Tulsa, the Tulsa County Attorney, Attorney General John Ashcroft, the United States Court of Appeals for the Tenth Circuit, the American Trial Lawyers Association, and the United States Army Corps of Engineers.

9. *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

10. *Matter of Hipp, Inc.*, 895 F.2d 1503, 1509 (5th Cir.1990); *see also Bloom, supra*, 391 U.S. at 204–205, 88 S.Ct. 1477.

ceedings are considered separate from the case in which the order was violated and is between the public and the alleged contemnor.[11]

In order to rule upon the Motion, the Court must consider three questions:

1. Does Saffa have standing to seek an order of criminal contempt;

2. Does the Court have the power to enter the order which Saffa seeks; and

3. Is Wallace entitled to a jury trial on the issues raised by the Motion.

If the answers to either of the first two questions is in the negative, the Motion must be denied without prejudice. Similarly, if Saffa has standing, and if this Court has jurisdiction, but if Wallace is entitled to a jury trial, then this Court can proceed only with Wallace's consent. Given that Wallace has filed suit against this Court and this Judge, the Court will presume that Wallace would not consent to a jury trial here.

*Standing*

In *Young v. United States ex rel. Vuitton et Fils S.A.*,[12] the United States Supreme Court held that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a [criminal] contempt action alleging a violation of that order." The rul-

ing recognizes that a prosecutor in a criminal matter must be disinterested and able to pursue the public's interest, not just the interests of a single individual.[13] In addition, the United States Supreme Court has held that the United States Attorney is the proper party to bring criminal contempt proceedings; it is only after the United States Attorney has declined to proceed that a court may appoint a disinterested private attorney as special prosecutor to prosecute the criminal contempt.[14]

In this case, Saffa's and Craige's participation in the adversary proceeding that generated the injunction allegedly violated by Wallace renders them ineligible to pursue the Motion for criminal contempt against Wallace. Furthermore, the United States Attorney is not a party to the Motion, nor is there any allegation that the United States Attorney has been presented with the facts supporting the Motion and declined to pursue an action against Wallace. The Court concludes that Saffa and Craige lack standing to bring the Motion.

*Jurisdiction*

The unique nature of criminal contempt requires the Court to determine whether it has jurisdiction over the same.[15]

11. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444–45, 31 S.Ct. 492, 55 L.Ed. 797 (1911) ("Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main case. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause."); *Hipp, supra,* 895 F.2d at 1510; *see also Bloom, supra,* 391 U.S. at 201, 88 S.Ct. 1477 (criminal contempt is "a violation of the law" and "a public wrong").

12. 481 U.S. 787, 809, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

13. *Id.* at 803–05, 107 S.Ct. 2124; *accord, Hipp, supra,* 895 F.2d at 1506–08; *In re Reed,* 161 F.3d 1311 (11th Cir.1998).

14. *Young, supra,* 481 U.S. at 801–02, 107 S.Ct. 2124; *see also Reed, supra,* 161 F.3d at 1314 (discussing *Young*). It is an open question whether bankruptcy courts have the ability to appoint a special prosecutor. Given that bankruptcy courts lack jurisdiction over criminal matters, it seems unlikely.

15. Courts that have considered the issue have come to differing conclusions. *Compare In re Ragar,* 3 F.3d 1174 (8th Cir.1993) (bankruptcy courts have the ability to hear certain criminal contempt proceedings so long as opportu-

Bankruptcy court jurisdiction is a creature of statute. Under 28 U.S.C.A. § 1334, Congress vested federal district courts with "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all *civil* proceedings arising under title 11, or arising in or related to cases under title 11." [16] Bankruptcy courts must operate within this framework.

Applying the strictures of § 1334, the Court finds the Motion to be outside the bounds of bankruptcy jurisdiction. The Motion seeks imposition of a criminal punishment; namely, incarceration for a period of not less than two and one-half years.

Section 1334 vests bankruptcy courts with jurisdiction over certain "civil proceedings." [17] The Court concludes that, just as Saffa lacks standing to prosecute a criminal contempt action, this Court lacks jurisdiction to impose the criminal sentence which Saffa seeks.

■ The Court notes, however, that it is not entirely foreclosed from presiding over contempt proceedings which some might consider criminal in nature. Bankruptcy courts have the implied "power to impose silence, respect, and decorum, in their presence, and submission to their lawful dictates." [18] Included in this implied power is the power to punish for contempt.[19]

nity exists for *de novo* review by district court) *with Hipp, supra,* 895 F.2d at 1509 (bankruptcy courts lack the ability to hear criminal contempt "not committed in (or near) its presence") and *In re Dyer,* 322 F.3d 1178, 1193 (9th Cir.2003) (criminal contempt power not created by § 105 of the Bankruptcy Code). In the Tenth Circuit, the issue remains undecided. *See Mt. America Credit Union v. Skinner (In re Skinner),* 917 F.2d 444 (10th Cir.1990) (holding that bankruptcy courts have jurisdiction to preside over civil contempt proceedings, but expressly declining to rule on criminal contempt) and *Graham v. United States (In re Graham),* 981 F.2d 1135, 1142 (10th Cir.1992) (stating in *dicta* that "bankruptcy courts have authority to exercise both civil and criminal contempt powers against recalcitrant government attorneys" (citing *Skinner* and FED. R. BANKR. P. 9020)).

16. *See* 28 U.S.C.A. § 1334(a) (West 2004) (emphasis added).

17. *It should also be noted that bankruptcy jurisdiction is further limited by the public rights doctrine. See Malloy v. Zeeco, Inc. (In re Applied Thermal Systems, Inc.),* 294 B.R. 784, 789 (Bankr.N.D.Okla.2003). Under the public rights doctrine, bankruptcy courts may only hear and decide issues that involve public rights emanating from federal bankruptcy power under Article I, Section 8, Clause 4 of the United States Constitution. *Id.* As the Court has observed, "[p]ublic rights in bankruptcy involve only those matters integral to the 'restructuring of debtor-creditor relationships.' " *Id.* (quoting *Northern Pipeline Const.*

Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71–72, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). As should be obvious, a criminal contempt proceeding, being criminal in nature, has no bearing on restructuring the debtor-creditor relationship. Indeed, as the Fifth Circuit has noted, "to the extent that the constitutional boundary of bankruptcy … jurisdiction is dependant on the public rights doctrine … that doctrine has never encompassed criminal matters." *Hipp, supra,* 895 F.2d at 1510–11 (footnote and citations omitted).

18. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quotations and citations omitted). The Tenth Circuit, like many other circuit courts, has ruled that the inherent power of courts, as enunciated by *Chambers,* is fully applicable to bankruptcy courts. *See Jones v. Santa Fe (In re Courtesy, Inns, Ltd., Inc.),* 40 F.3d 1084, 1089 (10th Cir.1994).

19. *Chambers, supra,* 501 U.S. at 44, 111 S.Ct. 2123 ("[I]t is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not merely the disruption of court proceedings. Rather, it was disobedience to the orders of the judiciary, regardless of whether such disobedience interfered with the conduct of trial.") (citations, quotations, and alterations omit-

*Right to Jury Trial*

■ While the Court leaves for another day the shaping of the contours of its contempt power, the Court concludes that it should not invoke whatever power it possesses to preside over the Motion. Saffa is requesting that Wallace be imprisoned for a term of 30–37 months. Where imprisonment for more than six months is being sought for criminal contempt, the alleged contemnor has the right to a jury trial.[20] Absent consent of the parties, bankruptcy courts are not empowered to conduct such trials.[21] The Court will not presume that Wallace would consent to a jury trial before this Court. Since Wallace is entitled to a jury trial on the issues raised by the Motion, it would be improper for the Court to hear the matter, including making proposed findings and conclusions for review by the District Court.

For all of the reasons set forth above,

IT IS HEREBY ORDERED that the Motion for Citation of Criminal Contempt filed June 9, 2004, by Ronald J. Saffa, plaintiff herein be, and the same hereby is, denied without prejudice.

ted). While *Chambers* fails to distinguish between criminal and civil contempt, the use of the word "punish" strongly suggests that criminal contempt is within the Court's power. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir.2001) (Posner, J.) ("it is punitive purpose that distinguishes criminal from civil contempt").

**20.** *See* note 10 *supra.*

**21.** *See* 28 U.S.C.A. § 157(e) (West 2004).